Louis Kagel, complainant,

*v.*

Harry I. Johnson et al., defendants.

[Decided January 19th, 1925.]

**Partnership—Joint Adventure—Relationship Disputed by Two of the Associates Who Claim Complainant Failed to Contribute to Capital According to Agreement and Not Entitled to Benefits Thereof—Agreement in the Nature of Partnership or, Perhaps, Joint Adventure Found to Exist and Accounting Decreed.**

On final hearing.

*Mr. Joseph E. Hunt* and *Mr. Amos Waln,* for the complainant.

*Mr. William N. Cooper,* for the defendants.

Buchanan, V. C.

Complainant's bill alleges that a partnership existed between himself and defendants, and seeks an accounting and payment of his share of the partnership assets. Defendants deny that a partnership ever existed, and contend that complainant is entitled only to the return of a sum of $600 loaned, with interest, which they had previously tendered.

The testimony of all the parties indicates that none had a particularly clear or definite comprehension of the situation existing between them or their relative rights and duties. This is not to be wondered at in view of their lack of education and of legal assistance. I doubt, indeed, if the evidence on complainant's behalf would have been sufficient by itself to establish the alleged partnership, but the testimony of the principal defendant, Harry Johnson, Sr., and of his assistant, Berman, leave no doubt in my mind but that a partnership,

or something in the nature of a partnership, was agreed upon and actually became existent and operating.

The facts as I find them to be are that an agreement was made by the complainant and the defendant Harry Johnson, Sr., and his son, George Johnson, that they should become partners or jointly interested in a manufacturing venture involving the purchase of lands, erection of buildings, installation of machinery and operation of business by manufacture and sale. The defendant Harry Johnson, Sr., was to have a half interest in the project and the other two each a quarter interest, and the capital or funds necessary for the project were to be furnished by them in the same proportions.

The amount of this capital was not fixed or agreed upon. The fact that complainant and George Johnson each furnished $600 (the latter afterwards put up an additional $100) would indicate that the original estimate was around $2,400. Johnson, Sr., testifies he estimated the required capital at about $5,000 or $6,000. He also testifies that the actual capital put into the venture was about $10,000, of which he put up all but the $1,300 contributed by complainant and George Johnson. I am by no means favorably impressed with much of his testimony, and his interest, of course, is to fix these figures as high as possible. While it well may be the capital required was more than $2,400, I am equally satisfied that it did not amount to $10,000, and I am strongly inclined to the belief that a considerable portion of the moneys which went into the later additions to the plant were profits from the operation.

It is quite evident from the testimony of Johnson, Sr., himself, and that of his chief salesman, Berman, without considering corroborative testimony of several other witnesses, that the partnership or joint venture commenced and was actually carried on for nearly a year without any question thereof being raised by Johnson, Sr., or anyone else. The property was purchased in January, 1921, the buildings erected with the assistance of the labor of Johnson, Sr., and the complainant, and occasional help from George Johnson.

The factory started to operate in April or May, and it was not until about Christmas that Johnson, Sr., determined that complainant was not a partner. He says he had asked complainant several times for additional contributions to the required copital, and, finally, about Christmas time asked him for the last time: "I got to know; I got to make a government report and I want to know whether I got partners or not." "He said he couldn't get no more money. * * * I said, 'All right, you ain't no partner to me, then.'" He said that up to that time he had considered him a partner.

Prior to that time, as I have said, they had functioned as a partnership or a joint business. Johnson, Sr., had obviously so informed the insurance company, which issued a liability policy to the concern in the joint names; he admits that he was the person who gave the information to the agent. He never had the names changed in the subsequent policies.

Johnson, Sr., offered complainant his $600 back, which complainant refused to take. Things went on thereafter pretty much as before, complainant considering himself a partner, and Johnson, Sr., apparently not so considering him. Johnson, Sr., had always been the controlling figure in the concern, naturally, from his larger interest, kept the books, and managed the finances and operation. The title to the lands had been taken in the name of Harry Johnson, Jr., because of trouble between Johnson, Sr., and his wife, as Johnson, Sr., says. Complainant and his mother both say they were shown a deed with several names on it, including complainant's. In this they seem to be mistaken, as the deed is made only to Harry Johnson, Jr., but there is no question about the property being partnership or joint property, for, admittedly, Johnson, Sr., obtained $118.75 from complainant (exactly one-fourth of the $475 purchase price) with which to complete the purchase.

The title being so held, Johnson, Sr., was able to do what he did do in 1923, i. e., sell and convey the property and business to one David without consulting complainant, for $15,-

000. No share of this was given or offered to complainant, although the return of the $600 was again offered him.

The fact is, as has been shown, that the agreement for partnership or joint venture was actually consummated substantially. It was not a mere unexecuted executory agreement. It was, in fact, executed, although, apparently, not completely executed by complainant, in that he failed to contribute all of his one-fourth share of the apparent cost. But assuming that there was, in fact, a breach by him in this behalf, that assuredly did not give Johnson, Sr., the right to exclude him from the business into which he had put, not only his $600, but nearly a year's work besides (at the time of the attempted rescission by Johnson, Sr.), although complainant would, of course, be liable for whatever damage was caused by his breach, and, doubtless, his share in the business would be subject to a lien for the unpaid capital and the additional damages.

This is so if the project here be deemed a partnership. *Hartman* v. *Woehr*, *18 N. J. Eq. 383*; *McCabe* v. *Sinclair*, *66 N. J. Eq. 24*. It is also true if the project be deemed a joint adventure not amounting to a technical partnership. *33 Cyc. 854*; *Turtur* v. *Isserman*, *2 N. J. Mis. R. 1084*.

It is clear that the partnership or venture has been terminated. Complainant is entitled to an accounting (which may be had before a master) on the basis of his having a quarter share in the business, with such debits against the same as shall be proper by reason of his default in contribution to capital, if that appear. The present assets include profits as well as capital, but complainant's "one-quarter interest in the business," of course, impliedly includes profits as well as capital.

It appears that George Johnson's interest in the business was sold to, and his place taken by, Harry Johnson, Jr., all parties consenting. This was during the continuance of the business, but, obviously, in nowise affects the issues as to complainant's right or interest in the venture.