GOODYEAR YELLOW PINE Co. *et al. v.* ANDERSON.

(Division B. Nov. 19, 1934. Suggestion of Error Overruled, Jan. 14, 1935.)

[157 So. 700. No. 31422.]

Parker & Shivers, of Poplarville, and Heidleberg & Roberts, of Hattiesburg, for appellants.

Grayson B. Keaton, of Picayune, and Hall & Hall, of Columbia, for appellee.

Argued orally by **Rowland W. Heidleberg**, for appellant, and by **Lee D. Hall**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee, Nancy Anderson, against the appellants, for the death of her husband, Gus Anderson, who was killed by a log in the operation of unloading logs from a car for the appellant Goodyear Yellow Pine Company. Gus Anderson was an employee of the appellant, and had been for many years, and was under the control of Willie Furr, who, at the time Gus Anderson was killed, was operating a crane or machine for the unloading of logs.

It appears that the logs which were being unloaded were loaded on a log car in the following manner: The first tier of logs was loaded on the log car, and then chained by a toggle chain to the truck or sills of the logging car, and on top of this a layer of logs was loaded above said toggle chain, and it was necessary, before unloading, to unfasten the toggle chain. According to the appellee's testimony, Willie Furr sent Gus Anderson under the car to unfasten this toggle chain, and some logs which were being hoisted by the crane rolled or struck against another log on the car, knocked it off, and it killed Gus Anderson.

There was dispute in the testimony as to whether Gus Anderson was directed by Willie Furr to go under the car and unfasten the toggle chain. It was admitted, however, that for a number of years Gus Anderson was under Furr and subject to his orders, and Furr was engaged in unloading this car of logs, and had the right

to direct Gus Anderson. It also appears that, prior to the unloading of these logs, Furr had told Gus Anderson that, when the logs were unloaded, he would have no further need of his services, and sent him to the superintendent, Stevens, to see if he could obtain other employment, but also told him he would be paid for that day. This conversation, of course, occurred prior to the killing of Gus Anderson. Stevens had given Gus Anderson employment in another department, to begin the following day, and it is admitted that the employment and the pay therefor were for the day, but it is insisted that Gus Anderson was not, at the time of his killing, engaged in the services and under the control of the company. However, there was proof by the company that Gus Anderson was not directed to go under the car to unfasten the toggle chain.

A number of witnesses testified in support of the appellee's claim, and to the fact that Gus Anderson was directed to go under the car and unfasten the toggle chain, and to the unloading operations, and that the moving of the logs off the car, was done before Gus Anderson had come from under the car and reached a zone of safety.

There was a verdict of seven thousand five hundred dollars for the appellee, Nancy Anderson.

The appellant requested a peremptory instruction, which was refused, and it is admitted that it was properly refused, as there was sufficient testimony to warrant a verdict under section 592, Code of 1930, but it is argued in an assignment of error that a new trial should have been given, because the verdict is contrary to the overwhelming weight of the evidence.

We have carefully examined the evidence, and we do not think the record makes a case for setting aside the verdict on the ground that it is against the overwhelming weight of the evidence. It is true there are more

witnesses for the appellants than for the appellee, but the evidence is in conflict, and we are unable to see clearly that the jury wrongfully decided the issue on the facts in this record. The rule is, where the evidence is conflicting, and the issue was fairly submitted to the jury on proper instructions, their finding is conclusive. St. Louis & S. F. R. Co. v. Moore, 101 Miss. 768, 58 So. 471, 39 L. R. A. (N. S.) 978, Ann. Cas. 1914B, 597. See, also, Davis, Dir. Gen'l of Railroads, v. Temple, 129 Miss. at page 10, 91 So. 689, at page 690.

It is next insisted that there was error in the submission of this case to the jury and that the recovery was excessive, because, under the proof, there was no showing of the life expectancy of the appellee, Nancy Anderson, and insufficient proof of the life expectancy of Gus Anderson. It is also argued that the widow was not entitled to recover for the loss of the society and companionship of her husband.

We have examined the testimony as to this, and do not find any evidence as to the life expectancy of Nancy Anderson. We think there were sufficient facts for the jury to find the life expectancy of Gus Anderson. He was fifty years of age, and had been employed by the company for three years, having lost but little time. It is true one witness testified that his health was not very good, but there are sufficient circumstances for the jury to determine the probable expectancy.

The rule now in force in Mississippi is that the measure of recovery is limited to the period of the life expectancy of the beneficiary, if it be shorter than that of the person killed, or to that of the deceased, if it be shorter than that of the beneficiary. Belzoni Hardwood Co. v. Cinquimani, 137 Miss. 72, 102 So. 470; Yazoo & M. V. R. Co. v. Barringer, 138 Miss. 296, 103 So. 86; Gulf Refining Co. v. Miller, 150 Miss. 68, 116 So. 295; Natchez Coca-Cola Bottling Co. v. Watson, 160 Miss. 173, 133 So. 677,

and Avery v. Collins (Miss.), 157 So. 695, this day decided.

As to the wife's right of recovery for the society, companionship, support, etc., of her husband, we think she is entitled to recover, and that the jury, from the facts, are to estimate and find the reasonable value of such companionship, support, etc. In the case of St. Louis & S. F. R. Co. v. Moore, supra, it was held that, in a suit by a widow and children for the death of the husband and father, the jury may take into consideration the companionship, society, support, etc., of the husband and father; the court saying on page 780 of 101 Miss., 58 So. 471, 475, that: " 'In estimating the pecuniary loss sustained by the widow, the jury may properly take into consideration her loss of the comfort, protection, and society of the husband, in the light of all the evidence in the case relating to the character, habits, and conduct of the husband, and to the marital relations between the parties at the time of and prior to his death; and they may also consider his services in assisting in the care of the family, if any, but the widow is not entitled to recover for her mental anxiety or distress over the death of her husband,' etc. In determining what damages are recovered in actions like the one under consideration, we must look alone to the statute. This is the measure and the limit of the right; and after a full consideration of the question our conclusion is that, in a suit by a widow and children for the death of the husband and parent, the jury may take into consideration the loss to the wife and children of the companionship, protection, and society of the husband and father, but not by way of solatium.''

In Brahan v. Meridian Light & R. Co., 121 Miss. 269, 83 So. 467, it is held that a husband may recover for such injuries as result in loss to him inflicted upon his wife, even where the statutes allow the wife to recover for in-

juries to herself in her own name as our statute does. It was also held that the statute allowing a wife to sue for injuries in her own name was not intended to displace the husband as the head of the family, nor affect his domestic rights to the services which the wife would render but for her injuries, nor prevent him from recovering damages per quod consortium amisit.

The proof in the case at bar shows that Gus Anderson received one dollar per day, but that he formerly received three dollars per day; the reduction having been made on account of the depression. It was also shown that, in addition to his employment, he was a preacher, but the amount of his earnings as such was not shown. It was shown that he spent all of his earnings on his home and family.

The amount to recover for the loss of the companionship, protection, and support, as above stated, is for the jury, considering all the circumstances shown by the testimony, and is not limited to the amount actually earned by the husband in his avocations. It is true one cannot recover for mental anxiety, grief, and distress, but can recover for the value of the companionship, protection, etc., as this is an element of compensation for the jury to consider and to award such damages as they may consider proper under all the circumstances of the case.

For the failure to prove the life expectancy of the wife as to age, health, etc., from which the jury could find the expectancy, we must reverse the case as to damages, and remand it for a new trial as to damages. The case will be affirmed as to liability, and reversed and remanded as to damages.

Affirmed as to liability, and reversed and remanded as to damages.