GULF, MOBILE & OHIO R. R. Co. *v.* WHITE.

Dec. 14, 1953

No. 38952      46 Adv. S. 63      68 So. 2d 458

*Welch, Gibbes & Butts,* Laurel, for appellant.

*Jesse M. Byrd, Ben Stevens,* Hattiesburg; *Barnett, Jones & Montgomery,* Jackson, for appellee.

LOTTERHOS, J.

This is an appeal from a verdict and judgment against the railroad company in the amount of $10,000 in an action for the death of Miss Ruth Mae White in a crossing accident. There are two principal assignments of error. The first is that the court should have directed

a verdict for the appellant railroad company, and the second is that the verdict was excessive and should be set aside for a new trial on damages.

It is unnecessary to discuss the evidence in detail, and, therefore, we will set out a brief summary of the facts in the case. It appears that on March 3, 1952, at about 6:30 P. M., Miss White was riding in a car with a fifteen year old boy on a street in the Town of McLain. The automobile in which she was riding was then traveling in a westerly direction approaching the tracks of the railroad company. At about that time a freight train was proceeding on the railroad track in a southerly direction through the Town of McLain. There were three crossings in the town, including the one at which the accident occurred and two others north thereof. The train struck the automobile at the crossing and Miss White was instantly killed. The proof shows that there were trees and certain structures north of the street and east of the railroad which to some extent obscured the view. The accident occurred after dark and the weather was rainy. The engineer testified that it was ''just good dark, just had turned good dark, and it was hazardous.''

The principal basis of liability relied on was that the statutory signals were not given. Section 7777, Code of 1942, at that time required that the railroad company ''shall cause the bell to be rung or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway or municipal street, and the bell shall be kept ringing or the whistle shall be kept blowing continuously until said crossing is passed.'' As in so many cases of this kind, there is conflicting testimony in the record with respect to the blowing of the whistle and the ringing of the bell. The evidence on behalf of appellant is that the statutory signals were given. The evidence on behalf of appellee is that the whistle blew for the northernmost crossing only and that the bell was not ringing, or that the wit-

nesses did not hear it. Some of the witnesses for appellee were in a position to hear the signals if they were given, but they did not hear them, other than the one blast of the whistle at the north crossing. To the contrary, witnesses for appellant state that the whistle blew for all three crossings and that the bell was ringing. The four members of the train crew who were in the cab of the locomotive testified that the automatic bell was ringing continuously from a point north of the northernmost crossing. The boy who was driving the car in which deceased was riding remembered nothing.

■■■ We have carefully examined this evidence in the light of Mobile and Ohio Railroad Co. v. Johnson, 157 Miss. 266, 126 So. 827, Mississippi Central Railroad Co. v. Roberts, 173 Miss. 487, 160 So. 604, Louisville and Nashville Railroad Co. v. Whisenant, 214 Miss. 421, 58 So. 2d 908, and other cases of similar character, and we conclude that the question of liability in this case was for the jury, and that the court below properly overruled the request for a peremptory instruction.

With respect to the amount of damages in this case, the trial court instructed for the plaintiff that the jury might take into consideration (1) the loss of companionship and society sustained by the plaintiffs, (2) all contributions and gifts that the plaintiffs had the right to reasonably expect based on past gifts and contributions, and (3) the funeral bills. At the request of the defendant, the court instructed that there could be no damages awarded for pain and suffering of the deceased. There was testimony that the funeral expenses amounted to about $500. The other two elements submitted to the jury were loss of companionship and society and reasonably expected contributions and gifts. The beneficiaries of the suit (referred to in the instructions as plaintiffs) were two brothers and two sisters of the deceased. It was shown that one brother was 48 years of age, the other was 38 years old, one sister was 40, and the other,

Mrs. Bessie Montgomery, was 52 or 53 years of age. The deceased was 49 years of age and unmarried. One brother lived at McLain and one sister, Mrs. Montgomery, also lived there. Although Mrs. Montgomery was married, it was shown by the testimony that her sister, the deceased, contributed $20 or $25 per month to her. The deceased had been employed as a clerk in a store at McLain but her salary or wages were not shown. It was in evidence that although the deceased lived alone in the old family home at McLain, the other members of the family visited her very often and there was a very close and friendly relationship between the brothers and sisters.

This Court has held that in a suit of this kind where the interested parties suing for the death of another are the brothers and sisters of the deceased, loss of companionship may be considered as an element of damages. G. & S. I. R. R. Co. v. Boone, 120 Miss. 632, 82 So. 335. In that instance, the deceased was 21 years of age and in the Army at the time of his death. His heirs were brothers and sisters. The Court said: "We think the plaintiff had a right to recover for loss of companionship, but the amount of this recovery should be influenced by the facts as outlined." It was pointed out in Avery v. Collins, 171 Miss. 636, 157 So. 695, that damages "for the loss of society and companionship, but not by way of solatium," may be allowed under the death statute. In that instance, a mother was suing for the death of her son. On this phase of the matter we think that the court properly allowed the jury to consider the loss of companionship and society suffered by the two brothers and two sisters of the deceased here, although the parties were not living together as a family unit. Within proper limits it was a matter for the jury to determine the extent of the damages to be allowed on this element in the light of the circumstances of the case.

With respect to the other element of damages submitted to the jury, that is, the reasonable expectation of gifts

and contributions, it would have been desirable for the proof to have shown the true life expectancy of the deceased and of Mrs. Montgomery, to whom she had been making contributions. It was pointed out in Avery v. Collins, supra, that damages because of loss of expected gratuities "must be based on evidence of previous gratuities, as well as upon the respective life expectancies, otherwise the issue would degenerate into mere possibilities, or speculations or conjectures." ██ However, this Court has held that proof of the age of a party and of his condition of health will give the jury a sufficient basis on which to determine the probable life expectancy. See Goodyear Yellow Pine Co. v. Anderson, 171 Miss. 530, 157 So. 700. ██ In the case at bar, the ages of the deceased and of Mrs. Montgomery were shown and the testimony indicates that the deceased was in fair health but does not disclose the condition of the health of Mrs. Montgomery. Nevertheless, we think that the jury had sufficient facts before it to pass upon this element of the damages, and ██ we reach this conclusion particularly because the total amount of the verdict does not appear to be exorbitant.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.