ILLINOIS CENTRAL RAILROAD COMPANY, et al. *v.* GWIN, ADMX.

No. 42521          January 28, 1963          149 So. 2d 340

February 11, 1963                    149 So. 2d 344

*Wise, Smith & Carter,* Jackson; *Joseph H. Wright, John W. Freels, Wence F. Cerne,* Chicago, Illinois, for appellant, Illinois Central Railroad Company.

*Forrest B. Jackson,* Jackson, for appellants, Standard Oil Company of Kentucky and C. H. Weathersby.

*Roach & Jones,* McComb, for appellee.

McGehee, C. J.

(Hn 1) This is a companion case to that of Illinois Central Railroad Co., et al v. Mrs. Zelda M. Nelson, Administratrix of Estate of Percy Nelson, Deceased, 146 So. 2d 69, decided by this Court November 5, 1962. In that case we settled all of the questions of negligence, liability, and inferentially the question of the jurisdiction of the chancery court, although we did not deal in the opinion specifically with the question of whether or not the suit could properly be brought as an attachment in chancery. We think that this question was thoroughly settled more than thirty years ago in the case of Clark v. Louisville & N. R. Co., et al, 158 Miss. 287, 130 So. 302, wherein the Court upheld the chancery jurisdiction in Wayne County in a suit for personal injuries to the plaintiff as an employee of the L. & N. R. Co. by an attachment in chancery against said defendant and Mobile & O. R. Co., Illinois C. R. Co., and N. O. & N. E. R. Co., as nonresident railroad corporations.

The factual situation insofar as jurisdiction was concerned, was similar to that in the instant case, and the right to attach in chancery under facts similar to those involved in the instant case has been recognized and followed since the rendition of that decision on October 13, 1930.

The remaining question in the instant case is whether or not the decree of the Chancellor was so grossly excessive as to require us to order that a remittitur be entered, or because its amount is manifestly wrong.

In the Nelson case, supra, we affirmed a judgment of $115,000 with a remittitur, reducing the amount of the judgment from $150,000, as rendered by another chancellor, to the sum of $115,000. In the Nelson case the deceased Percy Nelson, whose Administratrix was suing under the wrongful death statute of our State, was approximately 50 years of age, but he lived after the accident and endured physical pain and suffering for a period of fourteen days prior to his death. The proof disclosed that approximately sixty-four percent of Nelson's body was covered with severe burns. In the instant case the deceased Robert Sidney Gwin was thirty-two years of age and had a life expectancy of 36.01 years, and during the year 1958 he earned $3,347.50; in 1959 he earned $3,984.63; and in 1960 he earned $5,064.00. In other words, his annual income was steadily increasing from year to year, and his life expectancy, according to the proof of the complainant, was worth approximately $96,000.00 based on his earnings for 1960, and in the opinion rendered by the Chancellor he stated: ''Mr. Gwin was a young man. He was just starting out in life, holding down three jobs. We should have every reason to believe that his earning capacity would increase every year,'' and would continue to increase for a number of years.

In other words, the deceased in the instant case was able to hold three jobs, one with the Agricultural Stabilization and Conservation Service of the United States, one as a substitute mail carrier, and one as a picture show operater, in the last of which positions he made $65 per week.

(Hn 2) The appellant railroad company objected to the testimony of Dr. Harry C. Frye, who, when being questioned as to whether or not the deceased suffered any physical pain, since he was killed instantly and was found at the scene of the accident dead, ''lying face down with his body burned to a crisp'' immediately after

the accident, stated: "***there was a period in all probability, although very short, *.* * when he felt the heat movement to a degree of discomfort." Of course, everyone in the courtroom would have known that a person who had burned to death would have suffered as long as it took him to die, whether a doctor had so testified or not. At any rate, the Chancellor made no allowance for physical pain and suffering. Therefore, if Dr. Frye's answer to the question was somewhat speculative, as contended, and objectionable for that reason, then the witness being permitted to give the answer above quoted would have been harmless error since the Chancellor did not take it into consideration as an element of damage.

(Hn 3) Finally, the appellant railroad company contends that the damages also should be equally contributed by the railroad company, Standard Oil Company, and Weathersby. The judgment appealed from was against the said three defendants jointly and severally. The appellants Standard Oil Company and Weathersby contend that, if there should be an affirmance, we should require the railroad company to pay one-half of the damage and those two defendants to pay the other half. No authority is cited which would justify our requiring any particular contribution by the defendants respectively in payment of the damages allowed. Since the judgment based on the verdict of the jury was against the said three defendants jointly and severally, we shall not undertake to change the liability thus imposed.

(Hn 4) Although some of the Judges think the remittitur should be in a larger amount, and some think that the verdict of the jury should be affirmed as rendered, we have concluded that if the plaintiff will enter a remittitur so as to reduce the amount of the verdict from $105,000 to the sum of $90,000 the case shall be affirmed, and unless said remittitur is entered within 15 days from this date the cause will be reversed and remanded. It is so ordered.

Affirmed with remittitur.

All Justices concur, except *Arrington and Jones, JJ.,* who took no part, and *Lee and Rodgers, JJ.,* dissenting.

LEE, P. J., dissenting:

Robert Sidney Gwin, while assisting in unloading a freight car on the house tracks of the Illinois Central Railroad Company in the Town of Magnolia, was burned to death, following an explosion when the northbound passenger train, known as the "City of New Orleans", and an eastbound tank truck, loaded with petroleum products and owned by Standard Oil Company, collided as a result of the joint and concurrent negligence of both the Railroad Company and the Oil Company. The decedent was guilty of no negligence whatever. The decree awarded his surviving heirs-at-law $105,000.

At the time of his death, Gwin was thirty-two years old, with a life expectancy of 36.01 years. He was survived by his widow, thirty-six, and a son, seven years of age, respectively. He was an energetic, reliable, capable and trustworthy employee. In 1958, he earned $3,347.50; in 1959, $3,984.63; and in 1960, $5,064, proving his capability and promise for promotion and advancement. An actuary testified that the present value of his earnings at $5,064 per year to age sixty-five, discounted at three percent, would amount to $94,100. Actually this amount would be increased by several thousand dollars if carried to full expectancy. The Gwins were married on February 28, 1953, and had lived happily together since that time. The decedent was devoted to his son and took up much time with him. The evidence showed a strong case of companionship, love and affection, and the consequent loss which the widow and son have sustained by reason of his death.

When reparation, so far as money will go, is made for the pecuniary loss and for the loss of companionship, love and affection which this widow and son have sus-

tained on account of the death of their husband and father, I am unable to see how $105,000 can even be deemed an excessive amount of money as damages, much less how it can be said that such amount is so excessive as to meet any of the conditions heretofore laid down in many decisions of this Court as the basis for reducing awards by juries or decrees by chancellors.

The pecuniary loss in the present case is greater than it was in I. C. R. R. Co., et al. v. Nelson, 245 Miss. 395, 146 So. 2d 69. In that case, the deceased was fifty years of age, with an expectancy of 21.37 years. His earnings for the preceding year were $2,980. The present value of his anticipated life income, discounted at three percent, was $28,000. His total medical and other outlay of money was $2,467,97. The decree of the trial court had awarded $150,000, and, deducting the commuted value of earnings and medical expenses of approximately $30,000, the opinion observed that about $120,000 of that award was therefore intended as compensation for pain and suffering and loss of society and companionship to his widow, a four-year old son, and three adult daughters. The Court entered a remittitur of $35,000, thus still allowing $85,000 for suffering, because death did not occur until fourteen days after the injury, and loss of society and companionship to the named survivors. In doing this, the opinion recognized the basic principles, laid down in many decisions of this Court, which must govern in reducing the amount of verdicts or decrees, to-wit: ''When this Court reviews the amount of damages it is important that two considerations be kept in mind. The law has placed in the hands of the jury the matter of measuring damages in cases tried in circuit court, and this Court may not rightfully substitute its judgment for that of the jury; and this Court will *not disturb the jury verdict unless it evidences passion, prejudice, or bias.* In cases tried in chancery court, the rule is the *same* except that the test is *whether*

*the amount of the verdict is manifestly wrong.* The second important consideration is that when the amount of the verdict, when fairly and impartially reviewed, evidences passion, prejudice, or bias, or when the award of the chancellor is manifestly wrong, it is the duty of this Court to reverse or order a remittitur.'' (Emphasis supplied.)

As stated, in the present case, there was proof of a pecuniary loss of $94,100, which should have been increased under the measure applied in the Nelson case, supra. But, the Court, by its remittitur, is reducing the actual loss by $4,100, and is not allowing a penny for loss of love, affection and companionship. In my opinion, this action does not jibe with the rationale of the former decisions of this Court and is not warranted by them. Consequently, with deference, I dissent.

*Rodgers, J.* joins in this dissent.

RODGERS, J., specially dissenting:

I join in Judge Lee's dissenting opinion for the following reasons: First, I am afraid we are using the amount of the verdict in the case of I. C. R. R. Co., et al. v. Nelson, 245 Miss. 395, 146 So. 2d 69, as a pattern, rather than the formula set out in that case for determining damages. Second, it is obvious to me that the decree of the chancellor is not manifestly wrong. His decree indicates consideration of the various elements in determining damages to be assessed in a personal injury case, resulting in death. Third, I am concerned that we may be substituting our judgment for that of the chancellor, and it is not the duty of an appellate court to fix the amount of damages recoverable, nor substitute its judgment for that of the jury or the chancellor on this question. Lastly, this Court must never forget, nor lose sight of, the ancient judicial guidepost on which is written the Latin maxim: ''Corpus humanum non

recipit aestimationem'', and which means a human body is not susceptible of appraisement.

## ON MOTION FOR TEN DAYS ADDITIONAL TIME TO ENTER REMITTITUR

McGEHEE, C. J.

The affirmance of the above styled cause on January 28, 1963, was conditioned upon the appellee entering a remittitur within 15 days from that date, reducing the judgment of $105,000 to the sum of $90,000, and ordering that otherwise the cause be reversed and remanded for a new trial. The appellee has now asked for 10 days additional time after the court shall have ruled on her suggestion of error in which to enter a remittitur, in the event the suggestion of error is overruled. We have concluded that the appellee is entitled to have the said motion sustained.

(Hn 5) Under the case of Burton, et al v. Redmond, et al, 220 Miss. 704, 71 So. 2d 772, the filing of a suggestion of error was held to have the effect of suspending the judgment theretofore entered until the suggestion of error shall be disposed of. Therefore the additional time for entering the remittitur is hereby granted as prayed for.

Sustained.

All Justices concur.