ILLINOIS CENTRAL RAILROAD COMPANY *v.*
PIGOTT, ADMX., ETC.

No. 43715 December 17, 1965 181 So. 2d 144

430

*Robert Mitten, William F. Bunn, W. F. Cerne,* Chicago, Ill.; *Stratton and Jones,* Brookhaven, for appellant.

*Roach & Roach,* McComb; *B. D. Statham,* Magnolia, for appellee.

436

RODGERS, J.

A synopsis of the facts growing out of the tragedy of January 17, 1961, in which A. M. Pigott lost his life as the result of a collision between a northbound pas-

senger train and a gasoline truck driven by the deceased, is summarized in two companion cases heretofore decided by this Court. They are: Illinois Central R. R. Co. v. Gwin, 246 Miss. 67, 149 So. 2d 340 (1963); Illinois Central R. R. Co. v. Nelson, 245 Miss. 395, 146 So. 2d 69 (1962), 148 So. 2d 712 (1963).

The prior suits were brought to recover damages for the loss of the lives of two bystanders who were enveloped in flames caused by gasoline. The present action is brought to recover damages for the death of the driver of the truck involved in the collision. It is brought against the Illinois Central Railroad Company and the Estate of the Deceased Engineer, James Livingston. The declaration in this case, as in the prior cases, charged many grounds of negligence, but it was amended to add an additional charge, that the Railroad Company continued to employ the Engineer, James Livingston, after it had knowledge that he was incompetent. The Railroad Company filed its answer, and filed a counterclaim denying the allegations of negligence and asserting in its counterclaim the affirmative charge that A. M. Pigott was guilty of negligence which proximately caused his death; that his negligent acts caused damage to the equipment and property of the Railroad Company in the sum of $51,449.49, and that the Railroad Company was required to pay $211,562.50 to other parties for damages caused by the alleged gross negligence of A. M. Pigott. Thus it is claimed that a grand total of $263,011.99 is due from the Estate of the Deceased A. M. Pigott to the Railroad Company because of the accident.

The prior companion cases were brought by way of attachment in the Chancery Court of Pike County, Mississippi. The present suit was filed in the Circuit Court of that county and heard before a jury. The jury returned a verdict in favor of the Estate of the Deceased A. M. Pigott, against the Illinois Central Railroad Company in the sum of $150,000. At the same time, it found

in favor of the Estate of the Deceased Engineer, James Livingston. The Railroad Company has appealed from the resulting judgment of the circuit court, and has alleged six grounds of error said to have been committed by the trial court on which it seeks a reversal of this case.

I

Appellant, Illinois Central Railroad Company (hereinafter called Railroad Company), complains that two jury instructions tendered by it were erroneously refused by the court, and that the court's failure to grant these instructions constituted reversible error. The first of these instructions is as follows:

"The Court instructs the jury for the defendants that the defendant Illinois Central Railroad Company and its train crew gave all signals of the approach of its train to the Magnolia Street crossing as required by statute and you cannot find the defendants guilty of negligence in not giving the required crossing signals."

The appellee's declaration charged that the Railroad Company and the Engineer, James Livingston, failed to give the statutory crossing warning signals required by Mississippi Code Annotated section 7777 (1956). A careful reading of the evidence, however, leaves no room for conjecture. The conductor and baggage man testified that the signals were given at the distance, in the time and in the manner, required by the rules of the Railroad Company in compliance with the statutory law. All witnesses for both sides testified that the train's horn blew, south of the crossing as it usually did, at a distance sufficient to meet the requirements of the statute. The engine involved in this case had no bell. The appellee argues on the other hand that there was a conflict in the evidence as to where the horn began to blow, and also as to the intervals and manner of blowing,

whether short or long sounds, and whether or not blasts were given, continuously up to and across the Magnolia Street crossing.

██ █ The testimony, as we see it, not only shows a continuous or repeated blowing of the horn of the train through the crossing, but the testimony of one witness indicates the short blasts of the horn were so urgent that he realized something was on the tracks. We are convinced from a careful reading of the printed testimony that this instruction should have been granted to the jury, under the facts here shown in this record.

## II .

The following jury Instruction Number 5 offered by the Railroad Company was refused by the trial judge, and it is contended that his action in so doing was fatal error:

> "The Court instructs the jury for the defendant that there is no law fixing the rate of speed at which the train, with which the truck driven by Mr. Pigott collided, must travel at the crossing at which this accident occurred. This train therefore was violating no statute with regard to the speed at which it might operate. The Court further instructs the jury that no rate of speed at the crossing in question was negligence per se."

 We are of the opinion that the court was correct in refusing this instruction, because it is erroneous in two respects. First — under the common law, a railroad, like persons or individuals, is required to manipulate or use its property or operate its trains in such a manner as not to injure others, or destroy or damage their property. This rule is succinctly set out in Illinois Central Railroad Company v. Mann, 141 Miss. 778, 106 So. 7 (1925). In that case, this Court said:

> "At common law 'a railroad is bound to exercise reasonable care in the operation of its trains and

to avoid injury to persons and animals at all crossings, private as well as public; and if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen ordinary prudence would require an alarm or signal to be given by an approaching train, then its omission is negligence. The question is one for the jury to determine on common-law principles.' 27 R. C. L. 1004." 141 Miss. at 785-86, 106 So. at 8.

██ █ Second — Latin idioms should never be incorporated in jury instructions. We cautioned members of the bar against using excerpts from opinions in drawing jury instructions in the case of Graves v. Hamilton, 184 Miss. 239, 184 So. 56 (1938). We again repeat this caution here. Expressions readily understood by lawyers may be confusing to members of the jury. This instruction should not have been granted.

### III

The appellant complains that the instruction granted to the appellee on the doctrine of "last clear chance" was erroneously granted because there was no evidence adduced before the jury to establish the claim that the reduction of speed of the train would have avoided the accident here involved. This instruction, because of its length, is attached hereto as a Note. * In support of this argument, the appellant points out that one of its witnesses testified that mathematically, a collision would have occurred, regardless of whether the speed of the train was thirty, seventy or seventy-five miles per hour, because of the alleged five-second interval between the time the engineer observed the truck in a place of danger, and the time he applied the emergency brake; therefore it would not have taken effect in time to have prevented the collision.

██ █ The testimony of the conductor was to the effect that the train, then running forty-five seconds

ahead of time, did not slow down until after it had collided with the truck, and the conductor's office car had passed the "flash" of flames caused by the collision. A witness who was accustomed to having often heard the train approach the Magnolia Street crossing testified he heard the horn of the train giving an alarm, he said that he recognized the short blast to be a warning that something was on the tracks. He testified that after he heard the warning, he moved to a position in which he could see the truck going on the crossing. Other witnesses testified that they could not tell whether the train slowed down, until after the accident. The clear inference from this testimony is that, had the engineer attempted to slow the train at the time when he first began to blow short blasts in such a manner as to indicate that he saw something on the tracks, the driver of the truck would have had time to have cleared the crossing; because the train struck the truck only a few feet from the back end of the truck. Thus, considering all of the testimony in the record, we are of the opinion that the issue of the "last clear chance" was a jury question under the facts here presented.

On the other hand — the form of the instruction is so erroneous as to require a reversal of this case. This instruction tells the jury that if the engineer saw Mr. Pigott in a place of known danger and did not stop or retard the speed of the train, the jury should find for the plaintiff. In the first place, the testimony showed conclusively that the train could not have been stopped in any event, before the collision, and this instruction wholly disregards this fact. Second — the instruction does not set out that if the jury believed that had the speed of the train been retarded, the collision could have been avoided. The instruction is peremptory in nature. It does not require the negligence therein set out to be a proximate or contributing cause of the collision and resulting injury to the deceased, but sim-

ply says to the jury that if the engineer did not stop or retard the speed of the train under the circumstances, the jury was required to find for the plaintiff. In short, the instruction requires the jury to return a verdict in favor of the plaintiff if the jury believes that the engineer did not slow the train down after he saw Mr. Pigott approaching the track, without regard as to whether or not the failure to slow the train was a proximate, contributing cause of the death of Mr. Pigott.

## IV

■■ ■ Appellant also argues that the appellee's instruction, Number Seven, permitting recovery of support and contribution to members of deceased's family is erroneous because, it is said, there is no specific proof of reasonable expectation of gifts and contributions to members of the family. It is argued that the appellee did not meet the burden of proof necessary to establish such damages. The appellee cites as authority for this contention the following cases: Walker v. Polles, 248 Miss. 887, 162 So. 2d 631 (1964); Gulf, Mobile & Ohio R. R. Co. v. White, 219 Miss. 342, 68 So. 2d 458 (1953). We have concluded from an examination of these cases, under the light of the facts here involved, that they are not controlling in the instant case; because in these cases the plaintiff sought to recover damages based upon voluntary contributions, gifts and gratuities to brothers and sisters. In the present case, however, the deceased was the head of the family, and, as such, was under legal duty to support his family. Moreover, we are of the opinion that the evidence amply supports the claim of appellee. One witness testified that the sole object of deceased's life was to provide for his family and educate his children. He is said to have given his entire income to the family, and ■■ ■ we are of the opinion that it is not necessary to detail gifts and gratuities moving from a father as head of

the family to his wife and members of the family. Continental So. Lines, Inc. v. Klaas, 217 Miss. 795, 65 So. 2d 575 (1953); Avent v. Tucker, 188 Miss. 207, 194 So. 596 (1940); Goodyear Yellow Pine Co. v. Anderson, 171 Miss. 530, 157 So. 700 (1934); 22 Am. Jur. 2d *Death* § 260 (1965).

## V

 During the trial of this case, the appellee introduced certain pictures of the scene of the accident, including two photographs showing the body of deceased in the flames near the truck, taken while the body was still afire. One of these photographs was enlarged. The appellant strenuously objected to the introduction of these pictures upon the ground that they were offered to prejudice the jury, particularly since one of the pictures was enlarged so that the jury could more readily see the gruesome picture of a human body on fire. We cannot, however, agree with the contention of the appellant that these pictures had no probative value and should not have been introduced as a part of the evidence, because the record shows that the pictures were a part of the chain of factual proof to show the identity and location of deceased at the scene of the accident. The proof was admissible since there were other burned and charred bodies of human beings found by the firemen in the flames. This question has been before this Court on numerous occasions, and we have pointed out that although photographs of deceased persons may be gruesome and arouse the emotions of the jury, nevertheless, they are admissible in evidence if they are pertinent, material and relevant. Moreover, if such photographs are relevant and material, the defendant cannot complain of such portrayal of a condition which it brought about. Stokes v. State, 240 Miss. 453, 128 So. 2d 341 (1961); West v. State, 218 Miss. 397, 67 So. 2d 366 (1953); Price v. State, 54 So. 2d 667 (Miss. 1951);

Seals v. State, 208 Miss. 236, 44 So. 2d 61 (1950); Hancock v. State, 209 Miss. 523, 47 So. 2d 833 (1950).

## VI

The appellant argues in his final assignment of error that the amount of the verdict is so excessive as to show bias, passion and prejudice on the part of the jury. It is claimed that the jury overlooked the deceased's gross negligence, and appellant quotes from the opinion in the case of Illinois Central Railroad Company v. Nelson, 245 Miss. 395, 146 So. 2d 69 (1962), wherein this Court said that the driver of the gasoline truck was grossly negligent for his failure to stop in compliance with Mississippi Code Annotated sections 7776, 8211 (a) (1956). We do not reach the question of the excessiveness of the verdict, because we have concluded that the case must be reversed for a new trial because of the granting of erroneous instructions heretofore set out.

In passing upon the errors in the foregoing instructions, we have borne in mind our Rule No. 11, and although we are reluctant to reverse the case for the misdirection of the jury, nevertheless we are of the opinion from the record as a whole that the judgment in this case has resulted in a miscarriage of justice because an examination of the erroneous instructions here set out leaves no doubt that they were harmful. The errors become more apparent when viewed in the light of the large verdict returned by the jury.

We are of the opinion, and so hold, that the judgment of the trial court should be, and is hereby, reversed and remanded for a new trial in accordance with the foregoing opinion.

Reversed and remanded.

*Ethridge, P. J., and Gillespie, Brady and Smith, JJ.,* concur.

* Note: INSTRUCTION NO. 1 FOR PLAINTIFF

The Court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence that on the occasion in question Morris Pigott was riding in and operating the truck in question and that the said truck then and there approached the Magnolia Street crossing as the train of the Illinois Central Railroad Company, The City of New Orleans, approached said crossing and that the operator of said truck proceeded upon the said crossing and thereby was placed in a position of peril and danger from the running of said train and if you further believe from a preponderance of the evidence that the engineer for the Illinois Central Railroad Company saw the said truck was going upon said crossing and realized that there was danger of a collision between said truck and said train and that the said engineer saw, knew and appreciated the said position of peril of said truck in time to have stopped or retarded the speed of said train before crashing into the truck and that with such knowledge and appreciation thereof, if any, said engineer negligently failed to exercise reasonable care to stop or retard the speed of said train before striking the truck and injuring and killing Morris Pigott and that the said engineer by the exercise of reasonable care could have stopped said train or retarded the speed of said train before injuring and killing said Morris Pigott after the engineer knew and appreciated the fact that a collision was imminent and impending between said train and truck and that said engineer thereafterwards negligently failed to exercise reasonable care to stop said train or retard the speed of the train before injuring and killing the said Morris Pigott, then the jury should return a verdict in favor of the plaintiff and against the defendants.