MERCHANTS FERTILIZER & PHOSPHATE CO. *v.* STANDARD
COTTON GIN *et al.*

(In Banc.   Nov. 26, 1945.   Suggestion of Error Overruled Jan. 14,
1946.)

[23 So. (2d) 906.   No. 35956.]

202

Bozeman & Bozeman, of Meridian, for appellant.

204

Hal **F. Case** and **W. F. Latham,** both of Quitman, for appellees.

Argued orally by **A. S. Bozeman,** for appellant, and by **Hal F. Case,** for appellees.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

This case is an appeal from the Chancery Court of Quitman County. The complainant there, appellant here,

appealed from an adverse decree, and the defendants there, appellees here, attempted a cross-appeal. We cannot recognize appellees as cross-appellants for the reason that they did not comply with the rule for cross-appeals. A cross-appeal is perfected by filing a cross-assignment of errors, which we have held to be effectual in absence of bond for cross-appeal, by appellee. Rickets v. Rickets, 152. Miss. 792, 119 So. 194; Mississippi Fire Insurance Company v. Evans, et al., 153 Miss. 635, 120 So. 738; Ætna Life Ins. Company v. Thomas, 166 Miss. 53, 144 So. 50, 146 So. 134, overruling suggestion of error; Stephenson v. Louisiana Oil Refining Company, 180 Miss. 410, 177 So. 912. It is not sufficient for an appellee merely to argue errors, claimed to his prejudice, in his reply brief, as was done here. So we consider the direct appeal only.

The case originated in the chancery court on a bill for discovery and an accounting, and reference to a master, where appellant sought the discovery of certain matters from appellees in aid of appellant's case, and to have the master take and state an account between the parties, with a statement for the amount found to be due appellant, if any, on the account for which suit was filed. Appellees filed a plea, that appellant was a foreign corporation and not having complied with the laws of Missisippi governing foreign corporations doing business in this state, was not entitled to sue in the courts hereof, and hence could not maintain this suit. The appellees claimed to have overpaid appellant and made their answer a cross-bill. Their principal defense was based on an alleged special agreement between the parties wherein appellant was said to have agreed to allow appellees a special discount of $1 per ton on all chemicals and $1.25 per ton on all mixed goods bought from appellant in 1940, after appellees had bought at least one thousand tons during said season.

The chancellor granted the discovery and referred all issues of fact to the master, including the issue of whether or not any such special tonnage agreement had in fact been made as alleged by appellees. But the plea as to the

non-resident appellant doing business in the state without having qualified under state law was not referred. In the final decree, this plea was denied by the trial court, as not having been sustained.

The master was instructed to take and state an account as to the amount claimed from appellees for purchases, as set out in the original and amended bills, independently of the alleged special agreement for which appellees contended. The master was further instructed also to take and state an account between the parties as to the tonnage discounts claimed by appellees under said alleged special agreement, independently of the amount for which suit was brought. He was also instructed, as already stated, to determine whether or not such special tonnage agreement had in fact been made. Certain further special instructions were included in the order of references, with directions to report his findings to the court.

The master heard the evidence, which was voluminous and contradictory. He found that no special agreement had in fact been made for the alleged tonnage discount to appellees, although he calculated the amount of the claimed discounts thereunder, as instructed. He also took and stated an account with reference to the amount for which appellant sued, and reported his finding that appellant was entitled to recover the same with interest at six per cent per annum after thirty days from the respective dates of the invoices.

The law of this state through the years has uniformly been that the report of a master in chancery has the effect of the verdict of a jury in the circuit court, and the chancellor could not vacate or set it aside, unless manifestly wrong as against the overwhelming weight of the evidence. Hines v. Imperial Naval Store Company, 101 Miss. 802, 58 So. 650; Daniel v. Klein, 149 Miss. 135, 115 So. 193; Sadler v. Glenn, 190 Miss. 112, 119, 199 So. 305; Goodyear Yellow Pine Company, et al., v. Anderson, 171 Miss. 530, 536, 157 So. 700.

The chancellor correctly ruled that the burden of proof was on appellees to establish the affirmative defense of

the alleged tonnage discount agreement. Mask v. Allen (Miss.), 17 So. 82; Austin Clothing Company v. Posey, et al., 105 Miss. 720, 63 So. 224, 64 So. 5, 1 A. L. R. 13, reversing decree on suggestion of error, 105 Miss. 720, 63 So. 224, 64 So. 5, 1 A. L. R. 13.

The report of the master was based on involved statements, invoices, credits, adjustments, prices, and interest. He had most of the witnesses before him in person, saw and heard them testify. He was in a better position, therefore, than the chancellor or this Court to appraise the credibility and the weight of the testimony, as the chancellor, like ourselves, had to depend alone upon the mere letter of the written transcript. However, on the filing of the master's report, which found the amount claimed by appellant to be correct and due from appellees, and that no tonnage agreement had, as a matter of fact, been made between the parties, as claimed by appellees, appellees excepted only to the latter finding. Thereupon, the chancellor, in his opinion in the record of the case, said that since only one controverted issue was then presented or remained, he would decide the issue himself, independently of the master's report. The performance of the function of a master, whereby he reduces order out of confusion, simplicity from multiplicity, and certainty from uncertainty complies with the purpose for which he is appointed, and because his report is challenged by a party as to only one phase of his findings, such single challenge cannot retroactively overrule the original adjudication of reference, and authorize the chancellor to ignore the master's findings, with their characteristics of the verdict of a jury. However, that is what was done in the trial court, and in so doing the chancellor committed reversible error, since he did not adjudge the master's findings to be manifestly wrong, but merely ignored the report, although using the evidence therein. Griffith's Miss. Chancery Practice, Section 605; Daniel v. Klein, 149 Miss. 135, 115 So. 193.

Inasmuch as he did not hold the master's findings to be manifestly wrong, and since they do not appear to us to be

manifestly wrong, the report should have been confirmed, and a decree should have been entered in the trial court for appellant in the amount for which demand was made in the original and amended bills, plus interest thereon, as calculated by the master, we are constrained to reverse the decree and render decree her accordingly, with interest on such amounts from the date of the filing of the master's report, at the rate of six per cent. per annum.

Reversed and decree here for appellant.

### DISSENTING OPINION.

**McGehee, J.,** delivered a dissenting opinion.

In his delightfully readable book entitled "I Can Go Home Again," the story is told by Judge Arthur G. Powell of Atlanta about a police officer in a Georgia town who was required to report in writing to headquarters the finding of any dead animal on the public thoroughfares thereof. Upon finding a dead horse on Kosciusko Street, and knowing that he would be unable to spell the name, he dragged the animal some distance into Main Street and made his report. After a careful study of the pleadings and proof in the case at bar, I trust that I have been able to bring the subject matter thereof into a street, the name of which I know.

A suit on the indebtedness for the fertilizers here involved was originally filed in the circuit court on an open account, where the main and only material issue of fact would have been tried by a jury. The depositions of some of the plaintiff's witnesses were taken while the case was there pending. Later, the bill of complaint herein was filed in chancery, and in effect it sought a discovery of any and all facts that might pertain to the alleged agreement for a deduction of $1 per ton on chemicals and $1.25 per ton on mixed goods—to be made from the list prices shown on the invoices—and which agreement the plaintiff understood was to be set up as a defense on the account sued on. Of course, all of the facts necessary to establish the shipment and delivery of the goods and

the prices to be paid therefor in the absence of such agreement was within the knowledge of the complainant when the present suit was filed, and therefore no discovery of facts essential to making out the case was needed. However, the bill of complaint alleged sufficient facts on its face for an accounting in equity, and there was attached as exhibits thereto 61 invoices showing the purchase of 240 items of the chemicals and mixed goods at separate prices, and separately showing the weights and list prices of the items falling under each classification; also showing the purchase of approximately 2,000 tons of fertilizer at a total cost of $39,071.19, with 42 credits thereon amounting to $36,852.05, leaving the balance herein sued for, plus legal interest on the amount of each unpaid invoice from thirty days after date, unless the deductions under the alleged tonnage agreement is proper.

The question of whether this deduction agreement had been made was the only real issue of a serious nature in the case when it was submitted to a master. It is true that in its original answer, the defendant categorically denied the allegations of the bill of complaint and the correctness of the account sued on, but before the appointment of the master on April 12, 1943, the defendants, by the answer, filed on April 10, 1943, to the amended bill had admitted the purchase and delivery of all items listed on the account except a shipment to the East Mississippi Insane Asylum on the order of one Wm. Tolson at Meridian and charged to the account of the defendants through which Tolson purchased all fertilizers handled by him, and which said shipment had been admittedly paid for in full long prior to the filing of the suit in either court, and the defendants in their said answer say: "As to all other items, (excepting the one above mentioned) there is no dispute as to the correctness of the tonnage quantity and the delivery as shown by the invoices." Then in response to an order of the court theretofore rendered requiring that said answer be specific as to wherein the charges and credits were incorrect, if at

all, the defendants therein expressly predicated their denial of liability for the amount sued for on the fact that if the deduction agreement was given effect, there would be an overpayment to the complainant of $116.92, for which the defendants asked judgment under the cross-bill.

The defendants protested at all times before the appointment of the master against the trial of this law suit being delegated to a layman, since the liability for the judgment of $2,730.71 as of the date of the filing of the master's report by the certified public accountant depended solely upon the issue of whether or not the deduction agreement, as applicable to the whole account if more than 1,000 tons of fertilizer were purchased from the complainant, was in fact made.

Nor was this protest and right of the defendants to a judicial hearing on the only material issue of fact in the case ever waived. When required to defend the case before the accountant, and before a witness had been heard, the defendants' counsel again called attention in the outset of the hearing to the fact that there was not "any dispute of the items or the weights," and made it clear that their failure to make the "too broad" admission that the prices were correct was based upon the fact alone that they were subject to the deductions under the the alleged agreement hereinbefore mentioned. The defendants did not propose to offer evidence that the account was otherwise incorrect. Nor was there any attempt made during the hearing to challenge its correctness except to the extent that the defendants claimed that they had not ordered the shipment to the insane asylum which had been paid for by the said institution, and credited by the complainant on its account against the defendants.

In other words, the sole and only disputed issue was whether the tonnage agreement had been made and the effect thereof. The whole case on its merits depended upon and turned upon that question. That was the law suit.

Notwithstanding the admissions of the defendants in their amended answer and the oral statements of counsel dictated into the record reiterating the same, the master ruled that "it appears it will be necessary to put before me proof of the correctness of the account."

The result is that the defendant appellee is taxed with the master's fee of $200 for the work of figuring up the interest on an admittedly correct amount—a service that the complainant should have rendered for itself—and for deciding the issue as to the alleged deduction agreement —an issue that defendants were entitled to have decided either by a jury or a judicial officer.

It is true that if the master had found that the deduction agreement was in fact made, as the chancellor later found contrary to the master's report in that behalf, it would have been necessary to figure up the total tonnage of chemicals and mixed goods, respectively, as separately listed on the account, and to make the respective deductions claimed—a service that the clerk or some other officer of the court could have rendered as a master for almost a nominal compensation.

But conceding for the sake of argument that the calculation required the services of a certified public accountant, then the necessity for the deduction to be computed should have been determined by the chancellor in advance of the appointment of the master; that is to say, the chancellor should have first decided whether the agreement had been made as contended for, since that was the controlling issue in the case; and whereupon if the issue had been decided by him in favor of the complainant, it would necessarily follow that the decree would have been for the amount sued for, with computation of accrued interest to date.

It is to be conceded that the law is well settled to the effect that the master's report has the force and weight of the verdict of a jury on all issues properly submitted to him. This proposition is sustained by the court decisions cited in the majority opinion but in the case at bar I think that the chancellor was correct in holding

that he had improperly submitted to the master the main and only controversy in the law suit; that he had the right before he signed the final decree to correct the mistake whereby the defendants, had been denied a judicial hearing on their defense to the suit admitting the correctness of the items sued for; and that his decision on the record evidence, which had been heard before the master and whereby the chancellor held that the defendants were entitled to the deductions claimed is neither manifestly wrong nor contrary to the great weight of the evidence.

The rule whereby the master's report is given the effect of the verdict of a jury does not in my judgment, mean that the decree of the chancellor herein should be reversed and that the finding of the master should be reinstated. A trial judge is entitled to set aside the verdict of a jury and grant a new trial where he is convinced that the losing party has been deprived of a fundamental legal right—such as that denied the defendants in the instant case. Therefore, at most, the complainant in the case would only be entitled to have the decree reversed on its appeal here so that the chancellor may hear the witnesses in person and on such depositions as either party may desire to take under the limitations prescribed by law. I don't think that we should set aside the chancellor's decree and reinstate the judgment of the master under the facts of this case. If the controlling issue in a law suit is to be decided by a layman, he should have eleven associates to aid him in reaching the conclusion.

The appellant concedes in its brief that, except as to the question of whether the deduction agreement was made—an issue on which the master spent considerable time in hearing the conflicting evidence—the chancellor "adopted the master's report on all other issues," and the chancellor in his opinion said "I am deciding this issue independently of the report of the special master, because I am convinced it was not proper to appoint a special master to decide one issue of fact."

There is no statutory authority for the appointment of a master in this state except that found in Sections 1365 and 1371, Code of 1942, the first of which statutes provides for the appointment of "two or more persons in each county to be masters of the court, who shall remain in office during the pleasure of the chancellor, . . . ," and the second of which provides for the appointment of "a special commissioner" in any particular case. And the next section, 1372, seems to indicate that the appointment of a master or special commissioner under Section 1371 has reference to those directed to make a sale of any property, who shall give bond, etc.

But, of course, no one would question the inherent power of the court, which is sanctioned by the common law, to appoint a master to state an account in cases of mutual accounts between the parties and those involving complicated issues of fact as disclosed by their books and other documentary evidence, and to hear oral testimony relating thereto, where the correctness of the items and charges of an account sued on are challenged. But, if a chancellor does not have the power before rendering a final decree to correct a mistake made in referring the main issue of fact to a master, where an agreement relied on as a defense is not evidenced in writing or by documentary evidence, and if the appellate court is likewise bound by the report of the master, then a litigant may be deprived of a fundamental right under our legal jurisprudence of having a judicial hearing. Such an issue as that involved herein should either be tried by the judge elected for that purpose or by some member of the bar agreed upon by the parties or commissioned as a special judge by the Governor. Otherwise, a chancellor could delegate to laymen the trial of the main issue of fact in controversy in all cases on his docket that he may not have time to hear.

It is stated in the Am. Jur., Vol. 19, p. 255, that: "Section 371.—Whole of Cause.—A reference which directs a master to hear and determine the whole cause is not proper in any situation except by consent of the parties

to the suit. The result of thus referring the dispute without the consent of the parties is that the report of the master is not entitled to the legal weight that ordinarily attaches to a report; and, having been confirmed, the decree is not, on appeal, entitled to the weight that is ordinarily accorded to a decree of confirmation. A party is entitled to a judicial hearing in every cause; and if the higher courts were to tolerate such a complete delegation of authority to the master, the result would be to deprive the party of a judicial hearing. Of course, if both parties consent to the reference, no objection can be taken thereto, or an objection on the ground may be waived.''

And it was held in the case of Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 359, 32 L. Ed. 764, that ''it is not within the general province of a master to pass upon all of the issues in an equity case, nor is it competent for the court to refer the entire decision of a case to him without the consent of the parties. It cannot, of its own motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers.'' Thus said Mr. Justice FIELD in this time-honored decision of the Supreme Court of the United States.

I am therefore of the opinion that the decree of the chancellor should either be affirmed or that the cause should be remanded to give both sides an opportunity to have the witnesses personally appear before the chancellor if they desire to do so on remand.

Roberds, J., concurs in this dissent.