360 So.2d 669 (1978)
O.J. STANTON AND COMPANY, INC. and Fidelity and Deposit Company of Maryland
v.
Robert L. DENNIS and Jerry C. Watkins, d/b/a D and W Construction Company.
No. 50406.
Supreme Court of Mississippi.
May 24, 1978.
Rehearing Denied July 26, 1978.
*670 Young, Scanlon & Sessums, Brad Sessums, Jackson, for appellant.
Thomas, Price, Alston, Jones & Davis, Thomas W. Tardy, III, Jackson, for appellee.
Before PATTERSON, WALKER and COFER, JJ.
COFER, Justice, for the Court:
O.J. Stanton and Company, Incorporated (Stanton) and Fidelity and Deposit Company of Maryland, surety on Stanton's bond as contractor to perform certain work on Interstate Highway 55 in Holmes County, were sued by D & W Construction Company, Incorporated (D & W), subcontractor under Stanton for certain concrete work on the project. D & W's suit is based on breach of contract by Stanton. The suit was filed in the Chancery Court of the First Judicial District of Hinds County. From an adverse decision, Stanton has taken this appeal, assigning the following errors:
1. The court erred in not allowing as a set-off against sums due the appellees, amounts expended by the appellant, Stanton, over and above sums earned by the appellees on the Vicksburg National Military Park and Warren County projects.
2. The court erred in refusing to admit evidence of sums expended by the appellant Stanton on behalf of Empire Building Enterprises, Inc., on the Vicksburg National Military Park and Warren County projects, and in not allowing the amount so expended over and above sums earned as a set-off against sums found to be due the appellees.
3. The court erred in awarding the appellees judgment against Stanton in the amount of $8,727.06, as the sale price of a tractor in dispute and rental charges for a substitute tractor.
4. The court erred in awarding the appellees judgment against the appellants for prejudgment interest and for attorney's fees.
In its bill of complaint D & W claimed breach of the subcontract by Stanton in failing to have concrete at the site where and as needed by D & W, causing unproductive delay by D & W and its employees, resulting in labor payments in the amount of $7,148.12, and that it had been further damaged by Stanton's taking a tractor from D & W and selling it under circumstances hereinafter to be noticed, and then charging D & W an amount as rent for a replacement tractor in the amount of $1,027.06, and asked damage therefor in the total amount of $11,027.06.
D & W prayed accounting which it asserted Stanton had failed to render, and money decree for balance determined thereby to be due to D & W plus interest, attorney fees, and costs.
Stanton filed cross bill praying recovery for sums paid by it for D & W as presently to be noted herein.
On July 31, 1969, Stanton, having obtained contracts with the State of Mississippi for work to be performed on Highway 61 by-pass (by-pass) and with the United States Government for work in the Vicksburg National Military Park (park) both projects in Warren County, subcontracted to Empire Building Enterprises, Incorporated, (Empire) a part of the work to be performed on those two projects. Empire defaulted in its performance of the subcontracts, leaving its work uncompleted and owing to Stanton amounts which Stanton had paid on its behalf.
Thereafter, on October 18, 1969, D & W entered into contracts with Stanton by which it undertook to complete the by-pass and Park work left in default by Empire and on the same day entered into the contract with Stanton, the basis of this suit.
Stanton claims that D & W by its contracts assumed liability for the amounts left *671 owing by Empire in the amounts of $2,487.04 on the park contract, and $594.27 on the by-pass contract. In addition, thereto, Stanton claims D & W owed it $7,877.34 on the park project and $1,740.28 on the by-pass project, allegedly amounts paid out by Stanton for labor and materials at the instance and by understanding between D & W and Stanton.
Stanton, during this time, also had contracts for work in Marion and Sharkey counties, in the performance of which it was behind to a disturbing degree. In conference with D & W, D & W agreed to transfer some or all of its employees from the park, by-pass and Holmes County work to Marion and Sharkey counties to assist Stanton to become current in those two contracts.
There is conflict in the testimony as to a part of the conversation that resulted in this cooperation by D & W. D & W contends that J.H. Stanton, for Stanton, gave D & W to understand that if it moved its employees to the Marion and Sharkey jobs, it would come out of the by-pass and park contracts "with money in its pockets." Stanton testified that he only expected that would be the result. D & W claims this contradicted testimony amounts to a novation of its Warren County contracts, and based on that novation, it owed nothing to Stanton thereon.
We do not find in this conflicting testimony a novation of the subcontracts relieving D & W of deficit balances in their performance, nor do we find in the record any basis for conclusion that D & W assumed Empire's debt to Stanton. Whatever may have been their conversations leading to the execution of the two contracts for the Warren County work, the fact that these verbal negotiations were merged into the written contracts is a legal principle so ancient and well-known as to require the citation of no authority.
There is no issue as to D & W's loss on the Warren County contracts. Stanton paid out, on D & W's orders, sums of money in excess of the amount D & W was to receive from these contracts. The able chancellor concluded that all amounts Stanton paid over and above D & W's contract price for the performance of these contracts were paid by Stanton as a volunteer and no amount was allowed by her therefor. In her opinion, she relied upon McLean v. Love, 172 Miss. 168, 157 So. 361 (1934), and McDaniel Brothers Construction Co. v. Burk-Hallman Co., 253 Miss. 417, 175 So.2d 603 (1965). These cases are not decisive of the voluntariness vel non of the payments here involved.
Each of the three subcontracts here involved has a paragraph reading as follows:
6. ADVANCES;
Contractor may, but shall not be required to, advance sums to Subcontractor for the purpose of financing the work and may offset such against any subcontract earnings including final retainage without the consent of and free of any claim of unauthorized prepayment by any Surety and such shall not release the Surety in whole or in part. Contractor may, but shall not be required to, supply Subcontractor with labor, materials, equipment and supplies and other items acceptable to Subcontractor in the performance of the work and recover the value or price thereof against Subcontractor and the Subcontractor's Surety, if any, without being required to offset the same or any part thereof, against the earnings of the Subcontractor.
This covenant renders invalid the position that the deficit balance of D & W to Stanton resulted from payments by Stanton as a volunteer. In addition to this, there is proof from D & W that the method employed by the parties was that understood between them.
As an aid to D & W's performance of this subcontract with Stanton, Stanton procured from Carter Equipment Company, Incorporated, a tractor on a lease-purchase agreement, which Stanton placed in D & W's possession, on a lease-purchase basis, as to which Stanton and D & W entered into written agreement a pertinent part of which says:

*672 Upon the satisfactory completion and acceptance of all subcontract work by D and W Construction Company on the above mentioned highway projects, then D and W Construction Company shall have the right to exercise the purchase option which O.J. Stanton and Company, Inc. has with Carter Equipment Company, Inc. for said equipment upon the approval of Carter Equipment Company, Inc.
Toward the conclusion of its highway contracts, Stanton determined to sell at public auction all of its road machinery. In advance of the sale, it took possession of the tractor so held under the lease-purchase agreements, cleaned and painted it, and included it in the equipment sold in the auction. While there is no proof affirmatively showing D & W agreed to this course of action, the record is silent as to any objection by D & W and as to any actions taken by it to prevent its inclusion in the sale.
It is to be noted that D & W's option to buy the tractor was made contingent on (1) its satisfactory completion and acceptance of the subcontract work it had undertaken and the record shows that at the sale, this condition had not been met, and (2) the purchase would have to depend upon Carter Equipment Company's approval, which was nowhere in the record shown to have been obtained.
At the time of the auction sale of the tractor there remained owing to Carter Equipment Company, Incorporated, the balance of $2,347.32 on the lease-purchase agreement, which Stanton paid, and which it has not undertaken to recover in this suit. The auction sale brought a gross of $7,700 against which Stanton claims deductions of $350 as the uncontradicted reasonable cost of cleaning and painting the tractor and $385, the auctioneer's five percent commission on the sale, leaving a net (not considering at all the balance paid to Carter) of $6,965.
The chancellor awarded to D & W recovery on this transaction of $7,700, the entire gross auction sale price on the tractor.
The Holmes County subcontract project not being then completed, Stanton arranged with Carter Equipment Company for the use of another tractor for a total rental of $1,027.06; which rent it charged against D & W's account. The chancellor charged this rental against Stanton, and we agree with this conclusion, but we are of the opinion under the circumstances, here involved, that Stanton should have only been charged with $6,965, the net amount realized on the public sale of the tractor.
The chancellor found nothing should be recovered for idle time of employees claimed by D & W and we agree that this decision is correct.
Turning to the Holmes County project, Stanton transferred an amount of the balance owing to D & W as a credit on D & W's debt to it, leaving a gross balance due D & W of $7,270.50.
Stanton had a clause in its contract with D & W whereby it would furnish concrete to the amount of 105 percent of the theoretical requirements of the job, and whereby all it furnished above that amount would be charged against D & W at $14.50 per yard. A computation of the actual volume of concrete required shows it to have been within 105 percent of the "theoretical" volume, and therefore, Stanton is entitled to no credit therefor.
The performance bond of Stanton calls for payment by Stanton of all expense and attorney fees incurred in the enforcement of the contract. This bond, put in suit by D & W, covered only the Holmes County project contract, and the chancellor limited allowance thereof to the solicitor's service in the Holmes County recovery which she awarded to D & W. We are convinced that the work of the attorneys was enormous and that this work was long and arduous. The setting of fees, where the trier of fact has that authority, is a duty peculiarly within the judge's purview. Here the chancellor found D & W entitled to recover $8,673.01 attributable to the Holmes project. The attorneys proved services running to almost $10,000. She allowed fees to *673 D & W in the amount of $4,336, which she regarded as reasonable. While we might have allowed a smaller amount, we cannot say that she with her peculiar familiarity with the issues, their intricacy, the work of the attorneys, etc., fixed the compensation in such an amount that we should disturb it.
Summarizing our views to this point, we hold that D & W is entitled to an amount of $7,270.50 balance on the Holmes County project, $6,965.00 on the tractor transaction and $1,027.06 charged by Stanton as tractor rent. Stanton is entitled to credit against these amounts of $7,877.34 remaining unpaid of the park project advances and $1,740.28 remaining unpaid of the by-pass advances.
The credits to D & W are a total of $15,262.56 and to Stanton $9,617.62 leaving a net balance of $5,644.94 to D & W. To this is to be added the attorney fee of $4,336.
Stated differently, we find the status of the parties' accounts to be as follows:

 DUE TO D & W:
 Holmes County Project $ 7,270.50
 Tractor 6,965.00
 Rent on Tractor 1,027.06
 __________
 $15,262.56
 DUE TO STANTON:
 Park Project $ 7,877.34
 By-pass project 1,740.28
 __________
 $ 9,617.62
 TO D & W $15,262.56
 TO STANTON 9,617.62
 __________
 NET TO D & W $ 5,644.94
 PLUS attorneys fee 4,336.00
 __________
 TOTAL TO D & W $ 9,980.94

On the amount of $8,673.01, which the chancellor found owing on the Holmes County project, she decreed interest at six percent per annum from May 2, 1972, until the date of the decree. There was legitimate dispute between the parties as to the amount due D & W, the amount was unliquidated, and the sum to be paid had finally to be computed and stated by this Court. We conclude that it was error to allow any amount as interest prior to decree.
The net amount of the recovery, $5,644.94, is derived from gross amounts of $7,270.50 attributable to the Holmes County project wherein there is the surety company bond, and $7,992.06 from the tractor transaction. It is equitable to attribute one-half the net recovery or $2,822.47 to the Holmes County project. Therefore, joint and several judgment for that amount, plus attorneys' fee of $4,336, fixed by the chancellor against both defendants will be awarded to D & W and judgment for $2,822.47 will be awarded individually against Stanton to D & W.
The chancellor's taxation of costs will not be disturbed.
AFFIRMED IN PART AND REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SMITH, and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.