379 So.2d 308 (1980)
M.T. REED CONSTRUCTION COMPANY
v.
NICHOLAS ACOUSTICS & SPECIALTY COMPANY.
No. 51562.
Supreme Court of Mississippi.
January 23, 1980.
*309 Cox & Dunn, Vardaman S. Dunn, Jackson, for appellant.
Young, Scanlon & Sessums, Brad Sessums, Jackson, for appellee.
Before PATTERSON, P.J., and BROOM and COFER, JJ.
COFER, Justice, for the Court:
From a decree of the Chancery Court of the First Judicial District of Hinds County, considered substantially against it, appellant M.T. Reed Construction Company (Reed), and in favor of appellee, Nicholas Acoustics and Specialty Company, (Nicholas), appellant has taken this appeal and assigns numerous errors, which, in its brief, it has condensed into three points of argument:
1. The chancellor erred in finding that certain items of cost to Reed are not allowable under change order 3-A.
2. The chancellor erred in denying appellant's claim for delay damages.
3. The chancellor erred in allowing prejudgment interest.
The suit was begun by declaration in circuit court, by which declaration Nicholas sought recovery under a change order to a basic subcontract, to be noticed hereinafter, and prejudgment interest and punitive damages. The suit had contractual and tort features. In the circuit court it was determined that the contract feature contained complicated mutual accounts, issues which made transfer to the chancery court proper. Mississippi Constitution, section 161 (1890). In the chancery court appellee complainant, complying with Mississippi Code Annotated, section 11-1-39 (1972), filed its bill of complaint, wherein it did not pray for prejudgment interest, but incorporated a prayer for general relief.
The appellant was the successful bidder to become the prime contractor for the construction of the Mississippi Methodist Rehabilitation Center, in Jackson, and entered into contract for that work on April 24, 1972. The contract included work in ceilings, partitions and floors, and Reed by subcontract dated May 24, 1972, contracted with Nicholas, a contractor skilled in the required ceiling, partitions, and floor installation, for the performance of that part of the contract.
The building was being built for the housing and care of patients, and the specifications *310 called for the use, in designated areas, of wall partitioning of non-combustible and sound resistant materials. The particular material specified was in such short supply that appellee substituted a material fire resistant but not fire proof, which was available at a small reduction in price under that required by the specifications. Whether appellee did this substitution after coordination with the architect, through the architect's inspector on the job, was, to the extent of its materiality, a question for the trier of fact, being in conflict.
A fire broke out in a partition in the building, on October 2, 1974, when the building was 85 to 98 percent completed, and the conflagration brought into bright focus, if it was not from the beginning, the use of the substituted wall partition materials. (Some were able to testify that the materials were not fire proof because they saw them burning.)
Conferences ensued between the owner, the architect, appellant, and appellee, wherein the parties hereto undertook to escape the financial loss of replacing the substituted materials with specified materials. Finally, it was agreed, by a change order from the owner to appellant, that the materials would be torn out and replaced by materials mutually agreed upon and available, and that the owner would pay $70,000 toward the work entailed by the change order.
With this change order agreement, appellant and appellee agreed, reduced to their change order 3-A, (3-A), that they would do the work necessary under the owner's change order (G-10), and that only "actual labor and material costs plus taxes," would be charged, first against the $70,000 in change order G-10, and all above the $70,000 would be paid in equal parts by appellant and appellee. G-10 gave to appellant 110 extra days in which to complete its contract; by 3-A appellant gave to appellee 89 days wherein to complete work under that change order. (As to who was at fault makes significant the owner's agreement to pay $70,000 toward the remedial work, and Reed's agreement to pay one-half of the balance of the cost thereof.)
Four monthly reports were given by appellee to appellant covering its labor, material, and taxes costs on the 3-A work. Appellant Reed paid the first two of these, for November and December 1974, less 10 percent retained from their amounts, but never did pay the latter two reports.
The 3-A work was completed in March 1975 but Reed submitted to Nicholas its 3-A expenses summary on August 27, 1975, and in an amount re-examined and substantially increased in a summary tendered by appellant to appellee on November 5, 1975.
The parties were never able to agree on an account and a determination of which of them owed the other, and this suit resulted.
In answering Nicholas' bill of complaint filed as noticed above, Reed incorporated a cross bill wherein it injected a prayer for delay damages, in the amount of $20,642.86, contending that this damage was suffered by Reed because of the arbitrary act of Nicholas in substituting the wall materials as shown above. Delay damages were sought in the circuit court, by way of a counterclaim before transfer of the case to the chancery court.
After a time, the chancellor, after conference with the parties' attorneys, referred all issues and prayers in the pleadings, other than the delay damages matters in the cross bill, to a special master in chancery. Griffith, Mississippi Chancery Practice, Chapter 38 (2d ed. 1950). In her decree making the appointment, she recited that she had reviewed the pleadings, and held a pre-trial conference, and observed that "this case involves a complex mutual accounting to determine the respective costs to each of the parties in performing and completing `Change No. 3-A' to the subcontract of Nicholas Acoustics and Specialty Company, prime contractor, ... which accounting is to be followed by a calculation of the amount due from one party to the other, arising out of the sub-contract between the parties plus Change No. 3-A, and that a special master should be appointed to state the account between the parties and to make the aforesaid calculation."
*311 She appointed to that office an attorney and certified public accountant and made provision for the filing of itemized statements of claims supported by evidence of payments, on the part of each of the parties and for filing, by each party, of detailed exceptions to the claims of the other party, and that the master could take testimony in the hearing.
Pursuant to the appointment, hearing or hearings produced testimony and exhibits filling much of the ten volumes making up the appeal record herein. Within a reasonable and proper time after the conclusion of the hearing, the master filed his report of his findings of fact and including a statement of the account between the parties and a calculation of the amount he found to be due from either party to the other.
Exceptions were freely filed; these were examined by the master and he replied to them, giving explanation as to his reasoning in the case of particular exceptions.
In its appeal brief, Reed has condensed down to one item (with several parts) its assignment of error of the findings that certain claims of costs to Reed are not allowable under 3-A.
It is manifest that the substituted material, rejected by the owner, had to be torn out and carted away from the premises. Impressive preparations were made for this action, and Reed claims that it did the trucking and disposal of this waste or debris, carrying it some ten miles to a dumping area where it was covered with earth. These several items of expense are for labor plus taxes and insurance, trash chute material, and equipment rental. Reed asserts that this expense was a "direct cost to Reed in removing and disposing of the debris generated by the removal of unspecified sound board as directed by change order G-10 and was a proper reimbursable cost item to Reed. Appellee and the master and the chancellor (in their turns) were of the view that disposal of this discarded material was not "actual labor and material costs plus taxes," and the master disallowed it and the chancellor agreed with his finding.
It is, however, pointed out by appellant, that, notwithstanding a determination that reimbursement was not proper under the change order, the basic sub-contract between appellant and appellee provides that "cleaning up of rubbish and debris after this work and removal of same from premises ..." would be done by Nicholas.
During the hearing, appellee maintained that it, appellee, had moved to the site materials equal in amount to the waste hauled away by Reed, and that one cost would offset the other. On this state of the record, where strenuous conflict and contradiction existed, we cannot say that the master did not have substantial evidence upon which to base his decision. Our duty here, then, is to arrive at a determination of whether he should be upheld on the conflict.
We recently in Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978), repeated that where the chancellor is the trier of facts his findings of fact on conflicting evidence cannot be disturbed by us unless, with reasonable certainty, the findings are manifestly wrong and against the overwhelming weight of the evidence, and this is true even though we disagree with the finding and would have arrived at a different conclusion.
In Merchants Fertilizer and Phosphate Co. v. Standard Cotton Gin, 199 Miss. 201, 207-208, 23 So.2d 906, 907-908 (1945), a master was appointed to take and state an account and did so after a long hearing laden with contradictions, as here involved. The chancellor, when the master's report had been submitted, proceeded to decide the issue or issues involved in disregard of the report. This Court reversed the chancellor enunciating principles concerning hearings before masters:
The law of this state through the years has uniformly been that the report of a master in chancery has the effect of the verdict of a jury in the circuit court, and the chancellor could not vacate or set it aside, unless manifestly wrong as against the overwhelming weight of the evidence. Hines v. Imperial Naval Stores Co., 101 Miss. 802, 58 So. 650; Daniel v. Klein, 149 *312 Miss. 135, 115 So. 193; Sadler v. Glenn, 190 Miss. 112, 199 So. 305; Goodyear Yellow Pine Co. v. Anderson, 171 Miss. 530, 536, 157 So. 700.
* * * * * *
The report of the master was based on involved statements, invoices, credits, adjustments, prices, and interest. He had most of the witnesses before him in person, saw and heard them testify. He was in a better position, therefore, than the chancellor or this Court to appraise the credibility and the weight of the testimony, as the chancellor, like ourselves, had to depend alone upon the mere letter of the written transcript. However, on the filing of the master's report, which found the amount claimed by appellant to be correct and due from appellees, and that no tonnage agreement had, as a matter of fact, been made between the parties, as claimed by appellees, appellees excepted only to the latter finding. Thereupon, the chancellor, in his opinion in the record of the case, said that since only one controverted issue was then presented or remained, he would decide the issue himself, independently of the master's report. The performance of the function of a master, whereby he reduces order out of confusion, simplicity from multiplicity, and certainty from uncertainty complies with the purpose for which he is appointed, and because his report is challenged by a party as to only one phase of his findings, such single challenge cannot retroactively overrule the original adjudication of reference, and authorize the chancellor to ignore the master's findings, with their characteristics of the verdict of a jury. However, that is what was done in the trial court, and in so doing the chancellor committed reversible error, since he did not adjudge the master's findings to be manifestly wrong, but merely ignored the report although using the evidence therein. Griffith's Mississippi Chancery Practice, section 605; Daniel v. Klein, 149 Miss. 135, 115 So. 193 (Emphasis added). (199 Miss. at 207, 208, 23 So.2d at 907, 908).
In Broadhead v. Stack, 244 So.2d 382 (Miss. 1971), the pronouncements in Merchants Fertilizer and Phosphate Co. v. Standard Cotton Gin, supra, were noted and under different facts, the standing of the master's actions is brought into review.
This Court stated there that "The chancellor may confirm, modify, reject, reverse or recommit all or a portion of the master's report, just as a trial judge may set aside the verdict of a jury and enter a judgment notwithstanding the jury verdict," and then said:
The report of the master on facts revealed from evidence taken before him is given great weight by the chancellor in determining the case presented for his decision. The master's decision is necessarily based upon involved accounts, credits, adjustments, values and interest, all of which must be added or subtracted, as the case may be, in order to strike a balance. (244 So.2d at 384).
Appellant cites Mississippi State Highway Comm. v. Dixie Contractors, Inc., 375 So.2d 1202 (Miss. 1979), and quotes therefrom as follows:
... We note also that the manifest error rule has little, if any, application in cases such as this resting upon construction of documentary evidence. S & A Realty Co. v. Hilburn, 249 So.2d 379 (Miss. 1971). (375 So.2d at 1206).
There are involved in the record presently before us many questions not decided by an interpretation of documents in evidence and we consider the manifest error rule is clearly inapplicable here where the master and the chancellor have agreed in all details on conclusions arrived at by the master and submitted to the chancellor in his report.
We do not find manifest error or a decision contrary to the overwhelming weight of the evidence, and, as to the asserted error in the findings that Reed was not entitled to claim certain items of costs, to-wit those having to do with disposal of the waste and debris from the tearing away of the substituted materials, we cannot say there was manifest error.
*313 Reed bought substantially more vinyl than was necessary in the 3-A work and strongly insisted and insists that it is entitled to the cost thereof, and that it was erroneously denied it. What we have just above said relative to the claim for debris disposal applies here, and we find the claim as to the vinyl is not an allowable one.
Reed asserts that the chancellor erred in denying to it delay damages claimed. It is here set out again that the claim for damages assertedly caused by delay was injected into the case by Reed's cross bill. Through all the negotiations leading to change order 3-A, there was no intimation that Reed was about to be damaged by a delay caused by Nicholas. Delay must have been expected, if not anticipated, in the allowance of an extended period of time to Nicholas in change order 3-A.
Appellee asserts that, if otherwise allowable, such damages were waived by the parties' entering into the change order, and argues the point with a substantial degree of plausibility. We regard the allowance of delay damages as being a matter to be determined on an ad hoc basis, and that, under the circumstances here, the chancellor (who decided this issue without reference to the master) correctly and equitably denied the delay damages.
The final argument presented by Reed to be noticed here is that it was error to allow prejudgment interest to Nicholas. Reed cites and largely relies upon our recent decision in West Center Apartments, Ltd. v. Keyes, 371 So.2d 854 (Miss. 1979), wherein we held that it was error to allow such interest in the absence of a special prayer therefor, a prayer likewise absent here.
Reed also relies upon language found in O.J. Stanton Co. v. Dennis, 360 So.2d 669 (Miss. 1978), and quotes therefrom, wherein it was said that where a legitimate dispute on the items of damages existed and the amount had to be determined by the Supreme Court, prejudgment interest was not proper.
We conclude that either the Keyes case or the Dennis case is sufficient authority to deny this interest, and we find the assignment of error to be well taken.
Nicholas has taken a cross appeal and assigns as error that it, Nicholas, being the successful party, was assessed with half the administrative cost of the master.
All of the court costs were assessed to Reed, the master's costs being levied in equal parts against the parties.
It is elementary that the chancellor has wide discretion in the matter of assessing costs such as here at issue, but this discretion must not be abused. Owen v. Owen, 228 Miss. 534, 88 So.2d 100 (1956); Reinecke v. Gibbs, 196 Miss. 247, 16 So.2d 853, 18 So.2d 442 (1944).
The appointment and services of the master were no doubt anticipated at least from the transfer of the matter from the circuit court. It is our view that, while the master may have resolved the issues largely in favor of Nicholas, he was called upon to decide legitimate issues tendered by both parties, and that the charges incurred in his services were properly charged to both parties.
Recapitulating, we reverse the chancellor's decision as to the prejudgment interest, and on all other assignments of error, on direct and cross appeals, the decision is affirmed.
REVERSED AS TO ALLOWANCE OF PREJUDGMENT INTEREST; AFFIRMED AS TO ALL OTHER ASSIGNMENTS ON DIRECT AND CROSS APPEALS.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
BOWLING, J., took no part.