LEE, Justice,
for the Court.
This unusual case was filed by Nicholas Acoustics and Specialty Company [Nicholas] in the Circuit Court of the First Judicial District of Hinds County against M. T. Reed Construction Company and M. T. Reed, Jr. [Reed], seeking actual damages for breach of contract and punitive damages in the sum of two hundred fifty thousand dollars ($250,000). The contract phase of the suit was transferred to the Chancery Court of Hinds County, and the punitive damage feature was retained in the circuit court. The pleadings were reformed in chancery court on breach of contract, and the issues were so complex that a master was appointed to take evidence. The chancery court entered judgment for actual damages in favor of Nicholas in the sum of twenty-four thousand one hundred ninety-six dollars ($24,196.00), which judgment was appealed to the Mississippi Supreme Court and affirmed on all issues except prejudgment interest.
The punitive damage aspect of the case was held in abeyance until completion of the suit for actual damages in chancery court. Upon determination of that suit, the punitive part was tried in the circuit court before a jury, resulting in a verdict and judgment in favor of Nicholas for two hundred twenty-five thousand dollars ($225,-000) punitive damages.
We do not reach all points raised on this appeal since the question of whether or not the proof was sufficient to make a case for punitive damages and whether or not the lower court should have granted a peremptory instruction are dispositive of the case. We reverse and enter judgment here for the appellant.
The declaration charges (1) fraud, (2) economic coercion, and (3) malicious breach of contract. We are concerned only with the proposition of whether or not there was a *99 malicious breach of contract which amounted to an independent tort. The facts of the case, except the charge of malicious breach, were developed in the chancery court breach of contract trial for actual damages. M. T. Reed Constr. Co. v. Nicholas Acoustics and Specialty Co., 379 So.2d 308 (Miss.1980). The entire record of that case was introduced in evidence on trial of the present ease, the facts are fairly stated in the opinion, and we will not fully discuss the facts, except for brief reference.
Reed had the general contract to construct the Mississippi Methodist Rehabilitation Center for a sum in excess of two and one-half million dollars ($2,500,000), and Nicholas was a subcontractor on the ceilings, partitions, and floor installation of the prime contract. A fire broke out in one partition under construction by Nicholas when the building was eighty-five percent (85%) to ninety-five percent (95%) complete, resulting in one hundred forty thousand dollars ($140,000) damage. The owner agreed to pay seventy thousand dollars ($70,000) of the amount and Reed and Nicholas agreed to absorb the balance between themselves. Change Order 3A was issued for that purpose. This suit arose because of the differences in settling the expenses incurred by Reed and Nicholas in repairing the fire damage.
After the suit was filed in the circuit court, Reed moved to transfer the case to the chancery court because of the complexity of same and because of the voluminous records and evidence which would be introduced. No objection was made to the transfer motion.
Both M. T. Reed, Jr. and Don E. Nicholas were highly trained and experienced businessmen. Their negotiations on the contract, and final settlement, were hard and intense. In ascertaining whether there were bona fide differences between them in the final settlement, we set out Reed’s testimony as same appears in the abstract:
“The purchase of the vinyl involved about $10,000.00 worth and this figure was included in Reed’s charges against 3A work, less the credit of $1,400.00 applicable to the vinyl material. We had vinyl left over. This amounted to 5,000 square feet and is conceded to have been left over and we offered to give Nicholas half of it because we couldn’t return it. This offer, I believe was made at the November meeting. If it were later than this, then the offer was made whenever I found out about it. The letters don’t mention the vinyl that was left over.
* * * * * *
. Change Order 3A did not say anything about trucks, equipment and dozers, but this was equipment that was necessary to haul the trash out. Change Order 3A used the words ‘actual material and labor costs.’ That was the wording on it and I know what the wording was but my interpretation of that would mean the costs directly involved in doing the work. My interpretation of actual material and labor costs would include the trucks and bulldozer rental because that was used in the work. This is by my definition and the way I have seen work done in the construction industry.
* * * * # *
. . . There were a whole lot of papers to be looked at and I just didn’t look at all of them. I was paying Forby[1] to do that.
sk 9k 9k sje
. It was my opinion that the package tendered to Nicholas on November 5 was a fair way to arrive at this 3A accounting. This was the only thing outstanding on the Methodist job and I wanted to get it behind me. What I had in mind was a fair accounting on 3A in order to arrive at how much to deduct.
* * * # * *
Nicholas said, ‘before you start this, you have got to agree to the $10,000.00 for the painting and agree that my invoices are correct and then we will go into detail on yours.’ I said, ‘Don, I can’t agree that yours are all correct *100 without discussing it and I don’t care whether we discuss mine first or yours first, but I am not going to just agree to $10,000.00 for the paint and vinyl work in the fire area and that all your invoices are correct without going into them and then discussing mine.’ That’s when he got up and left and said something about court. At the meeting, Nicholas had some papers but we never got into the papers and I don’t know what they were.
******
At this time, we were viewing the paint and vinyl work in the fire damage area that had been incorrectly charged against 3A work at $1,400.00 and he was on the figure of $10,000.00 claiming that that is what Reed had in its insurance estimate so we got out the estimate and showed him it was about $2,100.00 and that is when he wanted to use the figure of $10,000.00 and have me to agree that his four invoices were correct before talking about my billings. I refused to do that and said that we would talk about mine first or his first, it didn’t make any difference, but that I was not going to agree without discussing his, that they were correct and the meeting broke up.
******
. I did not ever intend to apply any coercion. There was no duress or coercion. I just wanted to get the matter settled so we could make payment. I thought that the accounting that we gave Nicholas in August and the additional that we gave him in November was correct and to the best of my knowledge, it was correct, and I thought after we were sued that we had a legitimate defense. I never at any time terminated the discussions with Mr. Nicholas. I never threatened Mr. Nicholas with a lawsuit.”
In the recent case of Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797 (Miss.1979), the Court restated the principle governing recovery of punitive damages for breach of contract as follows:
“The rule in Mississippi is settled that punitive damages are not recoverable for a breach of contract unless such breach is attended by intentional wrong, insult, abuse, or such gross negligence that amounts to an independent tort. . .” 373 So.2d at 801.
Standard Life Ins. Co. of Indiana v. Veal, 354 So.2d 239 (Miss.1977), involved Standard Life’s refusal to pay a legitimate claim on a policy and actual and punitive damages were awarded against it. In affirming the judgment for punitive damages, this Court remarked that the company’s refusal to pay the claim was clearly contrary to the express provisions of the company’s own policy and was without any foundation whatsoever. The Court said: “. . .Of course, if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie . . . .” 354 So.2d at 248.
Again, in Aetna Casualty & Surety Co. v. Steele, supra, the Court said:
“If the appellant [insurance company] had a legitimate, allowable or arguable reason not to pay the claim of appellee, then punitive damages will not lie. Standard Life Ins. Co. v. Veal, 354 So.2d 239 (Miss.1978); Lincoln National Life Ins. Co. v. Crews, 341 So.2d 1321 (Miss.1977).” 373 So.2d at 801.
The record in this case is complex, containing four (4) volumes. The claims and positions of both parties are expressed therein, and, if either party had a- legitimate or arguable reason for not paying or settling the matter, then punitive damages were not recoverable. In the contract phase of the case in the chancery court, M. T. Reed Constr. Co. v. Nicholas Acoustics and Specialty Co., supra, this Court said:
“The appointment and services of the master were no doubt anticipated at least from the transfer of the matter from the circuit court. It is our view that, while the master may have resolved the issues largely in favor of Nicholas, he was called upon to decide legitimate issues tendered by both parties, and that the charges incurred in his services were properly charged to both parties.
*101 Recapitulating, we reverse the chancellor’s decision as to the prejudgment interest, and on all other assignments of error, on direct and cross appeals, the decision is affirmed.” 379 So.2d at 313.
Appellee insists that the chancery court suit involved only actual damages, and that the facts relating to a malicious breach of contract and an independent tort, as a result thereof, were not presented in the chancery court. We are not persuaded by that argument, and are of the opinion that the case did present legitimate and arguable issues. Therefore, we hold that the proof failed to make out a case for punitive damages and the judgment of the lower court is reversed and judgment is entered here for appellants.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, and COFER, JJ., concur.
BOWLING, J., took no part.

. Reed’s superintendent.