LEE, Justice, for the Court:
Jewell Davis filed suit in the Chancery Court of Lincoln County against Gayle J. Evans and Barbara Evans seeking fifty percent (50%) of their profits derived from the operation and sale of a nursing home in Brookhaven, Mississippi. The chancellor granted the relief prayed for and entered judgment in favor of Davis in the sum of forty-seven thousand one hundred sixty-one dollars thirty-one cents ($47,161.31) and the Evans have appealed, assigning two (2) errors in the trial below.
Although the evidence is contradictory in many respects, Gayle J. Evans and Jewell Davis admitted they entered into a joint adventure for the purpose of building a nursing home and both performed certain work toward construction of same. Appel-lee Barbara Evans testified that she had no knowledge of Jewell Davis’ connection with the venture and that her one-fourth (Vi) interest should not be subjected to appel-lee’s claim. She and Gayle J. Evans are husband and wife and jointly owned a fifty percent (50%) interest in the nursing home.
A corporation was organized under the name of Cartwheel Lodges of Brookhaven, and, at some point during the construction of the nursing home and its subsequent operation, the business was carried on in the corporate name. Later, the corporation was dissolved and the interest became vested fifty percent (50%) in the appellants and *1097 fifty percent (50%) in an individual who arranged for the financing of the business. Appellants sold their interest in the nursing home and appellee brought this suit for one-half (V2) of their interest or a twenty-five percent (25%) interest in the profits.
I.
Was the lower court manifestly wrong in holding that a joint venture was entered into by appellant Gayle J. Evans and appel-lee Jewell Davis and in entering judgment for appellee?
As stated, it was admitted by appellant Gayle J. Evans that he and appellee entered into a joint venture for the construction and operation of the nursing home, and that appellee performed work pursuant to the joint venture agreement, but he contends that they abandoned the original venture agreement and that the nursing home was an entirely different operation and business. The evidence for appellee is to the contrary. The chancellor found the following:
“Inasmuch as there is the admission of a joint venture by Jewell Davis and Gayle Evans at the beginning of this project, the primary question left to this Court for its decision is whether or not there was ever an abandonment by Jewell Davis of the project commenced by him and Gayle Evans, so as to enable Gayle Evans and Barbara Evans to enter into another arrangement with the McDonnells, without Jewell Davis being entitled to assert claim to any interest therein.
Based upon the pleadings and the oral testimony adduced at the hearing of this cause, this Court finds as a fact that there was a joint venture undertaken by Davis and Gayle Evans. The defendants, Gayle and Barbara Evans, have alleged in their Answer that there was an abandonment by Jewell Davis of this joint venture. The burden of proving such an abandonment is upon them, and they must do so by clear, unequivocal, and decisive evidence. This Court is of the opinion that the defendants, Gayle and Barbara Evans, have failed to prove by clear, unequivocal, and decisive evidence that Jewell Davis abandoned the joint venture, which he and Gayle Evans entered into. The most that can be said of the evidence is that it is highly contradictory. This Court, therefore, finds as a fact that such a joint venture was [not] abandoned. The joint enterprise was launched, and unique and substantial contributions were made thereto by Davis, all of which enured to the benefit of the Evans in their finally completed venture, and to deprive Davis of his right to share in the profits of the venture would be unjust and inequitable. This Court feels that if the Evans ever made a determination that Davis was not contributing to or was no longer to be considered a part of the venture, that they should have taken active, positive, and determinative steps to terminate the undertaking and should have made known their intentions to exclude his further participation in any efforts of their own. The relationship between joint venturers is in a sense fiduciary in character and imposes upon all persons engaging therein the utmost in good faith, fairness, openness, and honesty in all their dealings with each other, insofar as the undertaking is concerned.”
Sample v. Romine, 193 Miss. 706, 8 So.2d 257 (1942) establishes the law on joint venture in Mississippi. There, three parties entered-into an agreement to procure oil, gas and mineral leases in Yazoo County. Two of the parties, Falvey and Sample, advanced the purchase money for the instruments and Romine did the actual work of obtaining and buying the leases. The leases were in the names of Falvey and Sample, but Romine kept the papers. A well was drilled in 1929, without success, and no further activity occurred until 1939 when oil activity was renewed in Yazoo County. Romine learned of same, notified Sample and Falvey, (his widow) and sent the lease instruments to Sample. Subsequently, a producing well was drilled, the partners declined to share profits with Ro-mine and he sued for his share. The trial court entered judgment in Romine’s favor for one-third (Vi) of the royalties from the *1098 well, upholding the joint venture. On appeal, the judgment was affirmed, and the Court had the following to say about joint venture:
“While perhaps no exact definition of a joint adventure can be given, nor can a general rule be laid down by which the question as to what amounts to a joint adventure can be answered, the answer in each case depending on the terms of the agreement, the acts of the parties, the nature of the undertaking and other facts (30 Am.Jur., page 680, Sec. 7; State ex rel Ratliffe v. Superior Court, 108 Wash. 443, 184 P. 348), some definitions have been attempted. In 30 Am.Jur., page 677, Sec. 3, it is said: ‘A joint adventure has been broadly defined as an enterprise undertaken by several persons jointly, and, more particularly, as an association of two or more persons to carry out a single business enterprise for profit . . . an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge.’ In Simpson v. Richmond Worsted Spinning Co., 128 Me. 22, 145 A. 250, 253, the Court said a ‘ “joint adventure” has been defined as “an association of two or more persons to carry out a single business enterprise for profit.” . . . ’ A federal court said ‘ “Joint adventure” exists when two or more persons combine in joint business enterprise for their mutual benefit with understanding that they are to share in profits or losses and that each is to have voice in its management.’ Chisholm v. Gilmer, 4 Cir., 81 F.2d 120, 121, affirmed 299 U.S. 99, 57 S.Ct. 65, 81 L.Ed. 63, rehearing denied, 299 U.S. 623, 57 S.Ct. 229, 81 L.Ed. 458. Other definitions will be found in the notes in 48 A.L.R., beginning at page 1055, and in 63 A.L.R., beginning at page 910.” 193 Miss. at 726, 8 So.2d at 260-261.
The appellees attempt to distinguish the case sub judice from Sample on the basis that the joint venture was completed in Sample, while there was an abandonment of the venture here. In McCartney v. McKendrick, 226 Miss. 562, 85 So.2d 164 (1956), the Court set out what is required to constitute abandonment of a joint venture:
“It is said in 30 Am.Jur., Joint Adventurers, Sec. 45, p. 701: ‘ * * * Generally, where the purposes of the enterprise have not been fulfilled, no party has the right to withdraw from or abandon it without the consent of his coadventurers. If he does so, he is liable to his associates for the damages caused by his .act, or, if he thereafter pursues the enterprise alone, he may be compelled to share the benefits with his former associates.’
In 11 A.L.R. 432, the annotator states: ‘The rule seems to be that failure of a party to a joint adventure to contribute his share of the expenses is ground for abandonment of the enterprise by his co-adventurers, and his exclusion from further operations by them, provided they take definite steps to effect that result. They cannot, however, continue the enterprise, using what he has contributed, or failing to notify him of the dissolution, and then exclude him for a share of the resulting profits. * * * Under ordinary circumstances, however, where the enterprise has been launched and some contribution has been made by the parties who subsequently become delinquent, the rule is that active steps must be taken by those not in default to terminate the undertaking and exclude the delinquent from further participation, if they intend to deny his right to share in the profits.’
To the same effect are the cases of McDonough v. Saunders, 201 Ala. 321, 78 So. 160; Sime v. Malouf, 95 Cal.App.2d 82, 212 P.2d 946; Kagle v. Johnson, 3 N.J.Misc.R. 84, 127 A. 664 and McIver v. Norman, 187 Or. 516, 213 P.2d 144, 13 A.L.R.2d 749; see also 30 Am.Jur., Joint Adventurers, Sec. 35, p. 706.” 226 Miss. at 578-579, 85 So.2d at 169.
The burden of establishing an abandonment of the joint venture rested upon appellants. The chancellor found that they had not met that burden of proof. He upheld the joint venture and we cannot say that he was manifestly wrong in so doing. McHann v. McHann, 383 So.2d 823 (Miss. *1099 1980); Richardson v. Riley, 355 So.2d 667 (Miss.1978).
II.
Was the lower court manifestly wrong in sustaining appellee’s objection to testimony relating to the allowance of a reasonable contractor’s fee and in declining to permit a reasonable contractor’s fee to be deducted from the profits of the adventure?
At the conclusion of the evidence, the chancellor entered an interlocutory decree appointing an accountant as a Special Master to examine the records of the business and to determine the profits realized from the joint venture. The Special Master found appellant’s profits from the sale of the home to be one hundred ninety-seven thousand eight hundred five dollars twenty-four cents ($197,805.24). He further found appellant Gayle Evans entitled to a fifteen percent (15%) contractor’s fee. Judgment was entered for appellee in the sum of forty-nine thousand four hundred fifty-one dollars thirty-one cents ($49,451.31), less the share of the Special Master’s fee, for a net judgment of forty-seven thousand one hundred sixty-one dollars thirty-one cents ($47,-161.31). The chancellor, however, declined to admit testimony concerning the deduction from the profits of a contractor’s fee for appellant and disallowed the fee to appellant. In so doing, he declined to accept the Special Master’s finding of fact as to the contractor’s fee. In Broadhead v. Stack, 244 So.2d 382 (Miss.1971), the law was stated with reference to the position and worth of a Special Master’s finding of fact as follows:
“ ‘The law of this State, through the years, has uniformly been that the report of a master in chancery has the effect of the verdict of a jury in the circuit court, and the chancellor could not vacate or set it aside, unless manifestly wrong as against the overwhelming weight of the evidence. Hines v. Imperial Naval Store Company, 101 Miss. 802, 58 So. 650; Daniel v. Klein, 149 Miss. 135, 115 So. 193; Sadler v. Glenn, 190 Miss. 112, 119, 199 So. 305; Goodyear Yellow Pine Company et al. v. Anderson, 171 Miss. 530, 536, 157 So. 700. (199 Miss. 201 at 207, 23 So.2d 906 at 907).
See also State Highway Commission v. Wunderlich, 10 So.2d 453 (Miss.1942).
We held in Hines v. Imperial Naval Store Co., 101 Miss. 802, 58 So. 650 (1911), that the finding of a master in chancery on conflicting evidence is entitled to the same weight as the verdict of a jury. There is, however, much authority to the contrary (see 30A C.J.S. Equity § 543 b(2) [1965]; nevertheless, the report of the master is required to be submitted to the chancery court for confirmation. The chancellor may confirm, modify, reject, reverse or recommit all or a portion of the master’s report, just as a trial judge may set aside the verdict of a jury and enter a judgment notwithstanding the jury verdict.
The report of the master in chancery has no efficacy until it is confirmed by the chancery court. The very purpose of appointing a master in chancery is to aid the court and, although many reasons given by the courts for the need of masters in chancery have been corrected or have vanished, the need for masters in chancery is still essential in determining the facts in a complicated account. Griffith, Mississippi Chancery Practice, 2nd Ed. § 598 (1950).
The report of the master on facts revealed from evidence taken before him is given great weight by the chancellor in determining the case presented for his decision. The master’s decision is necessarily based upon involved accounts, credits, adjustments, values and interest, all of which must be added or subtracted, as the case may be, in order to strike a balance.” 244 So.2d at 384.
We are the opinion that the chancellor was manifestly wrong in declining to follow the Special Master’s finding[1] with *1100 respect to the contractor’s fee. From the record made, the contractor’s fee should be allowed in the amount of fifteen percent (15%), of the total construction cost, less any personal draws by the appellant. So computed, the contractor’s fee of $54,648.10 is subtracted from the net profit total, producing a total net profit of one hundred thirty-eight thousand six hundred fifty-seven dollars fourteen cents ($138,657.14). Ap-pellee’s one-quarter (VR share of these net profits, reduced by his one-half (Vfe) share of the Special Master’s fee leaves a net award to appellee of thirty-two thousand three hundred eighty-four dollars twenty-eight cents ($32,384.28).
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
PATTERSON, C. J., took no part.

. The final decree recited a net profit of $197,-805.24 from sale of the Cartwheel Lodges nursing home and that such figure was determined by accepting the Special Master’s report. However, the Special Master’s report stated profits of $193,305.24 and the decree reciting a different amount is an obvious error. Contractor’s fee and judgment are calculated by this Court on the profits stated in the Special Master’s report.